## HAYES MFG. CORPORATION v. McCAULEY.
### No. 9456.

Circuit Court of Appeals, Sixth Circuit.
Jan. 24, 1944.

Wellmore B. Turner and Lewis H. Mattern, both of Dayton, Ohio (Wellmore B. Turner, Guy H. Wells, Lewis H. Mattern, and E. H. & W. B. Turner, all of Dayton, Ohio, on the brief), for appellant.

Freeman T. Eagleson, of Columbus, Ohio, and Mills Matthews, of Dayton, Ohio (Eagleson & Laylin, of Columbus, Ohio, and Matthews, Matthews & Altick and Charles P. Pfarrer, all of Dayton, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appellant sought in equity a decree for specific performance of an agreement for exchange of its stock for the stock of the McCauley Steel Propeller Company, wholly owned by the appellee. Met with or anticipating a defense that its own stock was neither delivered nor tendered within the time specified in the agreement, and that time was of its essence, the appellant filed an amended complaint reciting its inability to secure the qualification and listing of its shares as required, because of the financial condition of the Propeller Company, the diligence of its own efforts to comply with the agreement, the appellee's knowledge of such effort and reasons for delay, his lack of objection to an extension, and finally, the consummation of an oral agreement waiving the contract period for performance. Upon the granting of a motion to strike such allegations from the amended complaint, and the appellant declining further to plead, a judgment for the appellee was entered upon the pleadings dismissing the bill.

So far as may be derived therefrom and from the nondivergent discussion of counsel, it appears that McCauley is an inventor holding patent rights to a steel airplane propeller. He had organized the Propeller Company to fabricate products called for by his invention, and had secured orders beyond the capacity of the propeller plant and his limited working capital to fulfil. Hayes was a successful corporation with its stock listed and traded on the New York Stock Exchange, engaged in an expansion program. Negotiation between the parties resulted in three written agreements executed between them on March 29, 1940. By the first McCauley was to turn over to Hayes all of his stock in the Propeller Company, in exchange for 25,000 shares of Hayes stock and $5,000 in cash. Of the 25,000 shares, 22,500 were to be given to McCauley or his nominee unconditionally, the remaining 2,500 shares to await and be conditioned upon the approval of the McCauley propeller by the Military, Naval, or Civil Aeronautics Authorities of the United States. The agreement provided that Hayes would, as promptly as possible, take such steps as might be required under the laws of Michigan or of the United States, including the Securities Act of 1933 and 1934, in order to properly and validly register and qualify its shares. It also undertook to secure the listing of such stock on the New York Stock Exchange. It agreed that the purchase and sale should be consummated "as soon as possible * * * but in no event later than ninety (90) days after the date of this agreement." Pending the acquisition by Hayes of the McCauley stock, it was to

manage the business and affairs of the Propeller Company, operate its plant, property, and equipment through the medium of its own officers, manufacture and sell Mc-Cauley propellers, make every reasonable effort to secure orders and contracts, place in its own name orders for the purchase of specified machinery and from time to time other machinery necessary to insure production capacity, and install it in the Dayton plant of the Propeller Company. It also agreed immediately to employ additional personnel for the Propeller Company and to pay and discharge all of its obligations except that owing to McCauley's counsel.

A collateral agreement, entered into upon the same day, provided that McCauley would give Hayes an exclusive license under his inventions relating to propellers and propeller blades upon specified royalties, and by another collateral agreement Hayes undertook to have the Propeller Company employ McCauley for a period of three years at a salary of $7,200 per year, to assist in the development of the propeller business subject to the direction of the President and Board of Directors of Hayes, but to be canceled in the event of the cancellation of the licensing agreement. That the contracts are inter-related is made evident by the cross-references in each of them to the others. The stock exchange agreement provides that if Hayes shall not, within the period of time therein provided, issue and deliver to McCauley the Hayes stock therein specified within the period of time provided, or if the stock should not be issued or delivered in full compliance with law or not properly listed on the New York Stock Exchange when delivered, the licensing agreement, at the option of McCauley, could be canceled, in which event Hayes was to become a creditor of the Propeller Company and to be reimbursed for any advances made by it to that company.

Upon the execution of the agreements, Hayes at once took over the management of the Propeller Company, ordered the machinery specified in the contract, and other machinery totaling $30,000, made advancements to the Propeller Company of $10,000 for the payment of its debts, guaranteed its credit to materialmen and hired new engineering personnel for it. In the meanwhile it took steps to issue and list its own stock but was unable to achieve such issue and listing before June 29, at the expiration of the 90-day period, for the alleged reason that the Propeller Company (which, as a new asset, was intended to serve as a base for the new issue), was in such shape financially that it was unacceptable both to the Securities and Exchange Commission and the Stock Exchange. Accordingly, it tried to obtain an extension of time from McCauley, and its pleading recites that it was granted an additional six weeks in which to perform, on condition that McCauley be paid $5,-000 at once instead of concurrently with the delivery of the stock, and on the further condition that the 2,500 shares, delivery of which was to await military approval of the propeller, should be freed from this requirement. However, when Hayes tendered the $5,000 McCauley refused it, and upon his announcement that he would insist upon strict compliance, appellant filed its bill for specific performance. McCauley ousted its representatives and reacquired control of the Propeller Company, and subsequently sent Hayes the moneys it had advanced, plus interest. Hayes accepted payment, but on August 8, having completed registration and listing of its stock, it tendered it to the defendant along with $5,000 but the defendant refused to accept.

In response to the case as made by the bill and amendments thereto, McCauley presented four defenses: (1) That time is of the essence of the stock exchange contract, and delivery of the Hayes stock not having been made within the period provided, Hayes had lost its rights under it; (2) that even if time is not of the essence of the contract Hayes showed no equities entitling it to require McCauley to perform; (3) that the alleged oral extension is void under the Statute of Frauds; and (4) that the repayment of advances to the Propeller Company by McCauley and acceptance by Hayes constituted mutual rescission of the contract.

■ The general rule in equity as distinguished from that applicable to suits at law seeking damages for breach of contract, is that time is not of the essence of the contract unless it has been made so by its express terms, or has been so treated by the parties, or is necessarily so from the nature of the contract. Brock v. Hidy, 13 Ohio St. 306. Ohio law conforms substantially to the law generally as set forth in Contracts, Restatement, § 276.

■ Says Professor Williston in the third edition of his work on Contracts, Vol. B, § 846, "When it is said that time is of

the essence, the proper meaning of the phrase is that the performance by one party at the time specified in the contract, or within the period specified in the contract, is *essential* in order to enable him to require performance from the other party. * * * Nor does the phrase mean merely that time is a material matter but that it is so material that exact compliance with the terms of the contract in this respect is essential to the right to require counterperformance." "Thus, time is almost always in varying degrees material, but not so often an essential matter." "Even though time is of the essence of the contract equity may relieve where the application of the general rule would work an unconscionable forfeiture." Williston, 846 et seq. "Where time of performance is of the essence of the contract, a party who does any act inconsistent with the supposition that he continues to hold the other party to his part of the agreement will be taken to have waived it altogether." Globe Brewing Co. v. American Malting Co., 152 Ill.App. 194, 198, and cases cited.

■ An examination of many decisions and text-writers, including Cheney v. Libby, 134 U.S. 68, 77, 10 S.Ct. 498, 33 L.Ed. 818; Taylor v. Longworth, 14 Pet. 172, 175, 10 L.Ed. 405; Pomeroy's Equity Jurisprudence 2233, and Williston, supra, §§ 845-856, leads to the conclusion that while no precise form of words is required to make time the essence of the contract, yet its intrinsic nature,. the circumstances of its execution, the conduct of the parties, the fact of substantial partial performance, and the inequity of a refusal to grant specific performance when it results in forfeiture repugnant to equity, are all circumstances to be taken into consideration in determining whether or not time is of the essence.

■ While the language dealing with performance in the present contract is strong, we are unable with reasonable certainty to say that thereby time was made of the essence of the contract, the door having been closed to proofs offered by Hayes in support of its amended complaint. The allegations were sufficient in scope to permit of evidence that the defendant, in a practical construction of the contract, did not consider time to be of its essence. The plaintiff offered to prove that McCauley was informed of the conditions making for delay, that he expressed willingness to grant an extension, that Hayes was diligent in its efforts to comply but that circum-stances beyond its control and the acts and conduct of the defendant were responsible for the delay. This bears upon the nature of the contract and its materiality is not destroyed by any view as to the invalidity of the alleged extension under the 17th Section of the Statute of Frauds. We think the court should have denied the motion to strike the material allegations from the amended complaint, and should have tried the issues thereby raised.

■ Nor are we persuaded that the alleged oral agreement was void under the Statute of Frauds. It has been held that a mere extension of time need not be in writing. H. W. Paine & Co. v. Manistee Tanning Co., 6 Cir., 279 F. 340; Stamey v. Hemple, 9 Cir., 173 F. 61. Ohio law is not otherwise. Negley v. Jeffers, 28 O. S. 90; Nonamaker v. Amos, 73 Ohio St. 163, 76 N.E. 949, 4 L.R.A.,N.S., 980, 112 Am.St.Rep. 708, 4 Ann.Cas. 179. To this line of authority McCauley makes answer that the alleged oral agreement includes more than a mere extension of time, that it involved substantial changes in the written contract in that it required payment of $5,000 by Hayes at once instead of on delivery of the stock, and freed delivery of 2,500 shares from the condition to which it was subject. But these provisions were for the benefit of the defendant and their enforcement was not at the base of the plaintiff's case. The only provision in its favor in the alleged oral agreement, was an extension of time. True, it is, of course, that it would have to comply with the other provisions of the agreement, but the only purpose of its proffered proofs was to show an extension which relieved it either by waiver or express agreement, of the onerous burden of the time provision of the contract.

■ The appellee's contention that the amended complaint shows no equity in the plaintiff, is without merit. It entered upon the performance of the contract, it assumed and performed managerial duties, provided engineering personnel, paid debts, guaranteed accounts, advanced working capital, and ordered substantial amounts of machinery, part of which was installed in the McCauley plant and the rest available for installation, if accepted. It is idle to say that Hayes suffers no detriment by the forfeiture resulting from a denial of its claim to relief. The equities in the bill are obvious and need not further be demonstrated.

The claim that the acceptance by Hayes of a return from McCauley of its cash advancements to the Propeller Company, with interest, amounts to a rescission, is likewise not persuasive on the present record. The issue was not tried. It involves consideration of factors which do not yet appear, namely that there was a meeting of minds, not merely upon the cancellation of the license agreement as provided in the writings, but that the entire deal was to be canceled in respect to which the writings are silent. They recite but one option to McCauley in the event that registered and listed stock is not delivered within 90 days, and that is the cancellation of his exclusive license to Hayes. There is no inescapable inference from the pleadings alone, that rescission of the entire group of contracts was intended by repayment of advances and its acceptance. This issue, as others, should be tried and judgment rendered based upon findings of fact and applicable conclusions of law.

The decree is reversed and the cause remanded for further proceedings in conformity herewith.