**In the Matter of H. L. GENTRY CON-STRUCTION COMPANY, a Michigan Corporation, Debtor.**

**No. 43771.**

United States District Court
E. D. Michigan, S. D.
Dec. 5, 1961.

Henderson & Henderson, Lassiter, Moore & Van A'llen, Charlotte, N. C., Johnson, Biggs & Britt, Lumberton, N. C., Allen & Hipp, Raleigh, N. C., for appellant Creditors.

Katcher & Feldman, Detroit, Mich., Rosenburg, Painter, Stanton & Bullen, Jackson, Mich., for debtor.

McCoy, Weaver & Wiggins, Fayetteville, N. C., for North Carolina Natural Gas Corp.

FREEMAN, District Judge.

This is a proceeding to review an Order of the Referee in Bankruptcy entered in proceedings for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., based on cross-petitions for review filed by the debtor and certain creditors.

The debtor, H. L. Gentry Construction Company, is a construction company incorporated under the laws of Michigan. On December 22, 1958, the debtor entered into two contracts with the North Carolina Natural Gas Corporation (hereinafter referred to as the "Gas Company") for certain construction work including the installation of 233 miles of pipeline for a natural gas transmission system in North Carolina.

Bonds were procured by the debtor from Seaboard Surety Company of New York (hereinafter sometimes referred to as the "Bonding Company") and deposited with the Gas Company as required by the contracts.

Despite unanticipated construction problems and consequential financial difficulties, the debtor completed performance under these contracts on October 12, 1959, at which time approximately 50 of its creditors (sometimes hereinafter referred to as the "North Carolina creditors") who allegedly furnished labor and materials for such work had notified the Gas Company that the debtor was indebted to them in the amount of $174,-507.81. The Gas Company then owed the debtor, Gentry, a balance of $141,-146.30 under the contracts, which it withheld pursuant to a retaining provision to insure payment of material, labor and subcontractors' claims. .

On September 16, 1959, one of such creditors instituted suit against the debtor, the Gas Company, and the Bonding Company in the State Court of North Carolina. On November 11, 1959, the Gas Company filed a declaratory judgment action against the Bonding Company in the State Court, which was removed to the U. S. District Court for the Eastern District of North Carolina, to have the bonds construed as instruments guaranteeing the payment of Gentry's contractors on this construction job, in which action the plaintiff prevailed, and on appeal, North Carolina Natural Gas Corporation v. Seaboard Surety Corp., 4 Cir., 284 F.2d 164, the court upheld the decision of the District Court that the bonds were payment bonds. On November 27, 1959, Gentry, pursued by creditors and unable to pay its debts, filed an original petition for arrangement under Chapter XI of the Bankruptcy Act in this Court.

The controversy in this case involves the retainage fund of $141,146.30 held by the Gas Company. The debtor seeks to invoke the summary jurisdiction of the Bankruptcy Court to order the Gas Company to turn over the retainage fund to the Bankruptcy Court and to hear and determine the validity, extent and priority of the various claims asserted against the fund, regardless of whether it takes possession of such fund. The Gas Company and debtor's North Carolina creditors questioned the Bankruptcy Court's jurisdiction and the Gas Company additionally alleged that it was an adverse claimant to the fund. The Referee concluded that the retainage fund was not subject to the summary jurisdiction of the Bankruptcy Court and declined jurisdiction to determine the validity, extent and priority of the respective claims asserted against such fund by the North Carolina creditors and the Bonding Company, and also the liability of the Bonding Company to the creditors or the Gas Company.

The Referee also ruled that the North Carolina creditors were entitled to receive from the plan of arrangement only the percentage payable under the plan to a general creditor, less the amount received from the retainage fund.

The North Carolina creditors filed a petition for review of that portion of the Order of the Referee fixing the amount which such creditors are entitled to receive under the arrangement plan; and the debtor filed a cross-petition for review of that portion of the Referee's Order denying summary jurisdiction in the Bankruptcy Court.

These petitions for review present the following issues:

### I.

*Does the Bankruptcy Court have summary jurisdiction to require the Gas Company to turn over the retainage fund to the Bankruptcy Court?*

The debtor contends that the Referee erred in concluding that there was "some fair doubt and reasonable room for controversy" as to the claim of the Gas Company that it was an adverse claimant of the fund within the meaning of Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897, because (1) the Gas Company did not claim the fund for itself but only held it for the benefit

of the North Carolina lien creditors; and also because (2) the Bankruptcy Court had constructive possession of the fund.

The appealing creditors contend that (1) the fund is not the property of the debtor and, in any event, (2) the Gas Company was an adverse claimant of the fund as held by the Referee.

The Gas Company contends that the retainage fund is held by it as a trust fund for the sole benefit of the lien claimants and it therefore had a claim to the fund adverse to the Receiver in Bankruptcy.

Section 311 of the Bankruptcy Act, 11 U.S.C.A. § 711, provides:

"Where not inconsistent with the provisions of this chapter, the court in which the petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and his property, wherever located."

■ We must look to the state law of North Carolina to determine what interest, if any, the debtor, Gentry, had in the retainage fund. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365.

Sections 44–6 to 44–12, Gen.Stat. North Carolina, provide for liens on improved real estate in favor of laborers, materialmen and subcontractors, and also provide that it becomes the duty of the owner, upon receiving the prescribed form of notice from any such person entitled to claim a lien, to retain from the money then due the contractor a sum not exceeding the price contracted for and to distribute such amount pro-rata among the claimants.

These statutes have been construed by the North Carolina courts as giving a lien claimant who serves proper notice an independent cause of action against the owner to compel payment at any time during the period of general limitations, even though such lien claimant has not commenced an action to enforce his lien within the six months' period required by the lien statute. Hildebrand v. Vander-

bilt, 147 N.C. 639, 61 S.E. 620; Charlotte Pipe and Foundry Co. v. Southern Aluminum Co., 172 N.C. 704, 90 S.E. 923; Guilford Lumber Manufacturing Co. v. Holladay, 178 N.C. 417, 100 S.E. 597; Campbell v. Hall, 187 N.C. 464, 121 S.E. 761; Schnepp v. Richardson, 222 N.C. 228, 22 S.E.2d 555; United States v. Durham Lumber Co., Inc. (CA 4, 1958), 257 F.2d 570.

In the Durham Lumber Co. case, the court, at p. 573, said:

"In any settlement with the general contractor, the owner may take credit for payments made by him to subcontractors, and he is required by statute to withhold sufficient funds to pay all of the claims of subcontractors of which he has notice. *The obligation of the owner to the subcontractor is, thus, primary; his obligation to the general contractor, secondary."* (Emphasis supplied)

The U. S. Supreme Court, affirming the decision of the Fourth Circuit in the Durham Lumber case; 363 U.S. 522, at p. 525, 80 S.Ct. 1282, at p. 1284, 4 L.Ed.2d 1371, said:

" * * * the Court of Appeals held that, under North Carolina law, the general contractor did not have a property interest in the face amount, as such, of the general construction contract. Specifically, the court said that 'except to the extent the claim of the general contractor exceeds the aggregate of the claims of the subcontractors, the general contractor has no right which is subject to seizure under the tax lien.' "

In the Charlotte Pipe and Foundry case, the court held that once the owner receives notice from the creditor of a contractor, the statutes impose on the owner "the duties of a trustee with respect to the amount due the contractor, and requires him 'to distribute the amount pro rata among the several claimants, as shown by the itemized statement furnished the owner.' " [172 N.C. 704, 90 S. E. 924] or of which notice has been given the owner by the claimant.

In Schnepp, supra, the court states:

"The claim of the subcontractor or material man supplants that of the contractor and the *duty* of the owner to pay is an *independent* and primary obligation created by statute." (Emphasis supplied) [222 N.C. 228, 22 S.E.2d 557]

■ From the above decisions, this Court concludes that under the law of North Carolina, the Gas Company is a custodian in the nature of a trustee of the retainage fund for the primary benefit of Gentry's creditors who have given proper notice and that the contractor, Gentry, has no property interest in the fund except to the extent the balance owing on its contracts exceeds the aggregate of the claims of such creditors.

The controversy over whether or not the North Carolina creditors have lost their liens by failure to enforce same within the six months' period required by the statute is of no consequence. The failure of a creditor to timely enforce his lien, after giving proper notice, has no effect upon the retainage fund. In the Charlotte Pipe and Foundry case, the court held that one who enforces his lien pursuant to the statute has no greater right to the retainage fund than one who does not. Proper proceedings to enforce the lien give the lien creditor additional protection by applying the real estate as security for the payment of his claim. It in no manner affects the status of the retainage fund.

This Court also holds that the Referee properly concluded that the Gas Company's claim of liability to Gentry's North Carolina creditors in an amount in excess of the retainage fund, as indicated by its affidavit, and due consideration of North Carolina law applied thereto, was sufficient to satisfy the requirements of Harrison v. Chamberlin, 271 U.S. 191, 46 S.Ct. 467, 468, 70 L.Ed. 897, and deprived the Bankruptcy Court of summary jurisdiction.

Harrison v. Chamberlin holds that a Bankruptcy Court is without jurisdiction in a summary proceeding to adjudicate a controversy in reference to property held adversely to the bankrupt estate, in which situations the trustee in bankruptcy must resort to a plenary suit. The Supreme Court in that case also held that the mere assertion of an adverse claim does not oust the Bankruptcy Court of jurisdiction, and that the Court may enter upon a preliminary inquiry "to determine whether the adverse claim is real and substantial or merely colorable", and if merely colorable, the Court can decide the claim summarily; but if substantial, the merits of the claim can only be adjudged in a plenary suit. At p. 195 of the opinion in that case at page 469 of 46 S.Ct. the Court said:

"* * * we are of opinion that it is to be deemed of a substantial character when the claimant's contention 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy,' Board of Education v. Leary, supra, [236 F. 521, 524], 527 (149 C.C.A. 573), *in matters either of fact or law;* and is not to be held merely colorable unless the preliminary inquiry shows that it is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." (Emphasis supplied)

It is to be noted that the above principle laid down in that case applies "in matters either of fact or law." The Referee, therefore, properly found "some fair doubt and reasonable room for controversy" as to the claim of the Gas Company under Harrison v. Chamberlin.

■ The summary jurisdiction of a court of bankruptcy extends "only to the person of the bankrupt and to property in his possession or in the possession of third persons who do not claim adversely to him or whose claims are colorable only." In re Standard Gas and Electric Co. (CA 3), 119 F.2d 658, 661.

"Although the debtor's undisputed title to property not in his possession would be enough under the language of Section 311 to authorize the court

to act summarily, the court does not acquire summary jurisdiction if the property does not belong to the debtor and is not in his possession, or if the title to property not in his possession is disputed by a substantial adverse claim." Slenderella Systems of Berkeley v. Pacific Tel. & Tel. Co., 286 F.2d 488, at p. 490 (CA 2).

The debtor argues that the Bankruptcy Court does have summary jurisdiction over the fund because the Gas Company does not claim the fund for itself and the debtor, Gentry, had constructive possession thereof.

The debtor contends, and the Court agrees, that property in the actual or constructive possession of the debtor when the petition is filed becomes subject to the exclusive jurisdiction of the Bankruptcy Court. This principle applies, however, only to the property of the bankrupt, Dannel v. Wilson (CA 6), 109 F.2d 364, and the test of such jurisdiction is not title in but rather possession by the bankrupt at the time of filing his petition. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876.

The mere fact that the third person having actual possession of the property in question is only a stakeholder for the benefit of others claiming adversely to the bankrupt, and even though such property consists of a chose in action in the nature of a debt owing the bankrupt, does not compel the third person having such possession to submit the controversy to summary jurisdiction of the Bankruptcy Court. In re Italian Cook Oil Corporation, D.C., 91 F.Supp. 72.

In the Sixth Circuit decision of Dannel v. Wilson, supra, involving creditor-materialmen of a general contractor who enforced their liens by bringing a foreclosure action in the state court prior to the adjudication in bankruptcy of the contractor, the Court based its decision denying a stay of the state court proceedings by the Bankruptcy Court on the fact that the state foreclosure action, being prior to the adjudication in bankruptcy,

gave the state court exclusive jurisdiction over the res, and Judge Simons, speaking for the Court, used strong dicta at p. 366 of the opinion in 109 F.2d 366, saying:

"The contention that the clerk and master did not hold it adversely to the trustee because he claimed no personal interest in it and was a mere stake holder, is not persuasive. He retained the fund under authority of the statutes of Tennessee and the decree of the Chancery Court for such parties as would be found entitled to it, among which were parties claiming adversely to the trustee."

The Referee found as a fact that one of the North Carolina creditors, K. M. Biggs, Inc., instituted a suit in the state court of North Carolina prior to the filing of the petition in these Chapter XI proceedings seeking to have the retainage fund appropriated to the payment of its claim. If so, it seems that the North Carolina State Court acquired exclusive jurisdiction over the fund under the authority of Dannel.

Although in the instant case the Gas Company does not hold the fund under any *decree* of a state court, it does hold the fund under the mandatory authority of the North Carolina statutes for such parties as may be entitled to it. The legally compulsive holding of the fund by the Gas Company in the instant case makes the dicta in Dannel particularly significant.

The three cases of In re Weston (CA 2), 68 F.2d 913, 98 A.L.R. 319; Wickes Boiler Co. v. Godfrey-Keeler Co., Inc. (CA 2), 116 F.2d 842; and Orinoco Iron Co. v. Metzel (CA 6), 230 F. 40, heavily relied on by the debtor to support his position, are readily distinguished. In re Weston turns on the fact that the creditor did not give notice or assert his lien until after the petition was filed and the Bankruptcy Court had taken constructive possession of the property, and Wickes Boiler turns on the fact that the creditor failed to file notice of his lien as was required under New York law. In the in-

stant case, the creditors filed notice of their claims presumably pursuant to North Carolina law prior to the filing of the petition. Orinoco Iron merely held that on the facts involved there, the fund held by the stakeholder was the property of the debtor. This Court has found that the fund involved in the instant case is not the property of the debtor.

The Referee properly declined to require the North Carolina creditors to prove the extent, validity and priority of their claims against the fund as requested by the debtor. The validity of any such claim depends only on whether the creditor gave the Gas Company the required statutory notice, and this can best be determined in a plenary suit if any party in interest deems it necessary. Priority of claims against the fund is not an issue. If the amount of the fund is insufficient to pay all valid claims in full, the Gas Company must distribute such amount pro-rata among the claimants or their assignees such as the Bonding Company in event of prior payment of any such claim. Sec. 44–11, Gen.Stat. N.C. The excess of the fund, if any, belongs to the debtor, Gentry.

■ The Bankruptcy Court has no jurisdiction to determine the validity of claims against a fund which is not subject to its jurisdiction.

■ Finally, the debtor in support of its position on the question of jurisdiction maintains that the creditors have invoked the jurisdiction of the Bankruptcy Court because they (1) filed claims in the bankruptcy proceedings; and (2) petitioned for an order to establish the status of their claims against the fund. There is no merit in either proposition. The creditors prudently petitioned the Referee to establish the fact that they were not waiving their rights to the fund by having filed a claim in the Chapter XI proceeding. There is nothing in this petition which can be interpreted or construed to mean that the creditors have invoked the jurisdiction of the Bankruptcy Court.

■ The filing of a claim in bankruptcy proceedings does not constitute consent to summary jurisdiction of the Bankruptcy Court. Daniel v. Guaranty Trust Co., 285 U.S. 154, 52 S.Ct. 326, 76 L.Ed. 675; Metz v. Knobel (CA 2), 21 F.2d 317; In re Nathan (D.C.S.D.Cal.), 98 F. Supp. 686.

An exception to this general proposition has been created by the courts where a counterclaim is asserted by the trustee for the bankrupt against a creditor who has filed a claim with the Bankruptcy Court. See In re Nathan, supra, for an excellent discussion on the status of the law regarding the question of a counterclaim filed against a creditor. All the authority the debtor relied on falls within this exception and, consequently, is not pertinent to the instant case.

## II.

*To what extent are the creditors who share in the retainage fund entitled to participate in the plan of arrangement?*

The Referee held and ordered that creditors participating in the retainage fund, as determined by the proper court, shall be paid by the disbursing officer in these proceedings only insofar as the amount to which any general creditor is entitled under the plan exceeds the amount received from the retainage fund. In other words, the Referee ruled that the North Carolina creditors were entitled to receive from the arrangement plan only the difference between the percentage payable under the plan to a general creditor and the amount received from the retainage fund.

The appealing creditors contend that this holding of the Referee is an indirect ruling that the retainage fund is a general asset of the debtor against which such creditors have no special or superior claim. They further contend that such holding is not consistent with the Referee's decision that the fund is not subject to the summary jurisdiction of the Bankruptcy Court. It is the position of these North Carolina creditors that if

the retainage fund is not the property of the debtor as held by this Court, then the debtor would be entitled to no credit for amounts realized by them from the retainage fund, and that such creditors would be entitled to participate under the plan of arrangement for the full amount of their claims, subject only to the limitation of not receiving in excess of 100% of their claims from all sources, and cite the case of Ivanhoe Building and Loan Ass'n of Newark, N. J. v. Orr, 295 U.S. 243, 55 S.Ct. 685, 79 L.Ed. 1419, as authority for this position. The Ivanhoe case does hold that a bankruptcy creditor who realizes a part of his debt from security not owned by the bankrupt is not a "secured creditor" as defined by § 1 (28) of the Bankruptcy Act, 11 U.S.C.A. § 1(28), and is not precluded from proving his claim for the full amount of his debt, though he may not collect and retain dividends which together with the sum realized from the security will exceed that amount.

The Sixth Circuit Court of Appeals in In re Fay Stocking Co., 95 F.2d 961, relying on the decision in the Ivanhoe case, held that a creditor who has a judgment against a bankrupt for personal injuries has the right to prove in bankruptcy the total amount of the judgment debt, notwithstanding part of it is covered by insurance. On p. 962, Judge Allen speaking for the Court, said:

> "But unless appellee was a creditor who had security for her debt upon the property of the bankrupt, she was not bound to have her security nor the avails thereof valued and to prove only for the difference between that value and the face amount of the debt. Ivanhoe Bldg. & Loan Ass'n v. Orr, Trustee, 295 U.S. 243, 245, 55 S.Ct. 685, 686, 79 L.Ed. 1419; Hampel v. Minkwitz, County Treas., 5 Cir., 18 F.2d 3."

The effect of the Referee's ruling on this point was to give the creditors entitled to participate in the retainage fund the status of general unsecured creditors under the plan of arrangement.

The debtor contends, and this Court agrees, that the Referee did not reach this issue on the basis of his holding that the Bankruptcy Court lacked summary jurisdiction over the fund on the adverse claimant theory. Taking this approach, it seems that the Referee should have awaited the decision of the Court in a plenary suit as to the status of the retainage fund before determining the rights of the appealing creditors in the plan of arrangement. However, the rights of such creditors in the plan having been determined by the Referee, and they having appealed therefrom, this Court must dispose of the issue. Debtor cites no authority on this issue and only argues that if the Bankruptcy Court had taken jurisdiction, the Referee could then have determined the rights of all parties in the fund.

It is the holding of this Court that the retainage fund, under North Carolina law, is not the property of the debtor except to the extent that the fund exceeds the aggregate of the valid claims of the creditors against it. It is the opinion of this Court that those creditors having valid claims against the retainage fund are entitled to participate in the plan of arrangement for the full amount of their claims though they may not collect and retain dividends which, together with the sum realized from the fund, will exceed the full amount of their claims.

The decision of the Referee is affirmed in part and reversed in part, and an appropriate Order may be submitted in accordance with this opinion.