**In the Matter of FABRIC TREE, Debtor.**

**No. 75 B 1383.**

United States District Court,
S. D. New York.

Jan. 11, 1977.

873

Cole & Deitz, New York City, for appellant, by Anthony J. D'Auria, Robert J. Rosenberg, Robert D. Lang, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for Creditors Committee (appellee), by Harry A. Margolis, William R. Fabrizio, Alan E. Rabunski, New York City, of counsel.

Levin & Weintraub, New York City, for Fabric Tree, Inc. (debtor-appellee), by Michael J. Crames, Myron Trepper, New York City, of counsel.

OPINION AND ORDER

WERKER, District Judge.

This is an appeal from an order entered on August 2, 1976 by the Honorable Roy Babbit, Bankruptcy Judge, acting in the absence and at the request of the Honorable Stanley T. Lesser, Bankruptcy Judge, to confirm the plan of arrangement of the debtor in possession, Fabric Tree, Inc. ("Fabric Tree"). Appellant Mangel Stores Corporation ("Mangel") seeks a determination that the bankruptcy court lacked juris-

diction to consider the rights of Mangel under an escrow agreement between Mangel and the Fabric Tree Creditors Committee (the "Committee"). Mangel also contends that the evidentiary hearing held in this matter failed to comport with the requirements of due process and that the findings following that hearing were erroneous.

Fabric Tree operates a chain of thirty stores selling fabrics, patterns and notions. Mangel owns a chain of apparel stores. In August of 1975, Fabric Tree filed a petition for an arrangement under chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* Discussions with a group of outside investors led to the advancement of some funds to Fabric Tree but, before a plan of arrangement was filed, Mangel became involved in negotiations with Fabric Tree, its principals and the Committee. By May, 1976, these discussions had advanced to the point where three documents were signed:

1. A "purchase and sale agreement" dated May 4, 1976 between Mangel and the principals of Fabric Tree in which Mangel agreed to purchase the stock of the principals and to hire them for at least one year. This agreement, conditioned upon the confirmation of a plan of arrangement before July 15, 1976, was not submitted to the bankruptcy court for approval.

2. A "loan and security agreement" ("security agreement") dated May 4, 1976 between Fabric Tree and Mangel in which Mangel agreed to provide continuing financing to Fabric Tree in exchange for a first lien upon designated assets of Fabric Tree. The bankruptcy court approved this agreement on May 7, 1976.

3. An undated letter of confirmation ("escrow agreement") sent to the Committee by Mangel in which Mangel agreed to turn over a $600,000 certificate of deposit to Christopher Ballaban, chairman of the Committee, as escrowee.[1] The certificate was to be used to fund a fifteen percent all cash plan for the creditors and it was payable to the order of Mangel on September 2, 1976.

The escrow agreement was not submitted to Judge Lesser for his approval, but payment by the escrowee to the disbursing agent was expressly conditioned upon the entry of two orders by the bankruptcy court. First, the court had to grant Mangel a first security security interest in all Fabric Tree assets on or before May 10, 1976. This requirement was met. Second, the court had to confirm a plan on or before July 15, 1976 requiring no more than $450,-000 for the payment of allowable unsecured claims and $150,000 for priority and administration expenses. Whether this condition was fulfilled is a matter of dispute on this appeal.

In late June of 1976, Mangel discovered that Fabric Tree was using financing received from Mangel to reduce administration expenses incurred prior to May 7, 1976 and to pay current operating costs. This, Mangel submits, increased its exposure under the escrow agreement beyond the agreed upon $600,000 figure and prevented confirmation of the plan. In Mangel's opinion, it also necessitated the cancellation of purchase orders and trade guarantees entered into on Fabric Tree's behalf. Judge Lesser, on the other hand, found that it was around this time period that "Mangel decided that it no longer favored the acquisition of Fabric Tree."

At a hearing held on July 13, 1976 as part of the confirmation process, Judge Lesser fixed the fees to be allowed professionals involved in the arrangement proceeding. This was necessary in order to bring outstanding debts within the amount allowed under the escrow agreement. A further hearing to finalize confirmation was also scheduled at that time for the morning of July 15, 1976. Mangel was present at the July 13 hearing but raised no objection to the July 15 confirmation date.

Judge Lesser learned for the first time on the morning of July 15, 1976 that, according to Mangel, the escrow fund could not be utilized for the deposit required by statute

---

1. Although the escrow agreement bears no date, the bankruptcy court found that it was

"apparently executed on or about May 4, 1976."

because the terms of the escrow agreement had not and could not be met. Mangel also stated at that time that it would seek plenary relief if the escrow funds were released. Judge Lesser adjourned the confirmation hearing to the morning of July 27, 1976 so that the issue raised by Mangel could be adequately resolved and Mangel assured the court that in the interim it would not seek to collect the loans it had extended to Fabric Tree.

At the next hearing, held on July 27, 1976, Mangel continued to maintain that the financial provisions of the escrow agreement had not been met; to this it added the contention that confirmation could not take place in any event now that the July 15, 1976 date had passed. An evidentiary hearing to consider these questions was held that afternoon. Mangel participated in that hearing after the court agreed that participation by Mangel would not be taken as a waiver of its objection to the bankruptcy court's exercise of jurisdiction.[2]

Following the July 15 and 27, 1976 hearings and without the benefit of transcripts, on July 30, 1976 Judge Lesser delivered an informal opinion from the bench. Although he indicated at that time that a written opinion might be prepared, it appears that this did not take place. Consequently, in reviewing the conclusions of the bankruptcy court, I am remitted to the corrected transcript of the adjourned confirmation hearing held on July 30, 1976.

Judge Lesser held that he had summary jurisdiction on several grounds to determine the rights of Mangel, Fabric Tree and the Committee under the escrow agreement. First, he observed that the character of Mangel's participation in the proceeding served to bring it within the jurisdiction of the court as either a party or one who consented to the court's jurisdiction. Second, he noted that to deny jurisdiction

would be to "emasculate the ability of the Bankruptcy Court to supervise the confirmation process." Finally, Judge Lesser opined that deposit of the funds with the chairman of the committee was tantamount to deposit with the court for jurisdictional purposes; however, he did not rely upon this ground.

On the merits, Judge Lesser concluded that the July 15, 1976 confirmation deadline should not be enforced, that the $150,000 ceiling on priority and administration expenses did not include expenses paid prior to the confirmation date out of operating funds and that the escrow fund could be turned over to the disbursing agent if the plan was confirmed by "the close of business" on August 4, 1976.

Since then, on October 22, 1976 Judge Lesser entered an order giving Mangel possession of Fabric Tree's assets and authorizing foreclosure of the Mangel security interest in such assets and subsequent sale to the Sande Textile Corporation. Thus, only the disposition of the escrow fund is at issue here.

## I. Jurisdiction

There are several established bases for the exercise of summary jurisdiction by the bankruptcy court. Of these, the major one is possession of the property by the debtor or the court. 2 Collier on Bankruptcy ¶ 23.-05 (14th ed. 1975). Nevertheless, there have been instances in the past when the exercise of summary jurisdiction has been upheld without a showing that there was property in the actual or constructive possession of the court or the debtor simply because a contrary ruling would undermine the effectiveness of the bankruptcy courts as a vehicle for the resolution of serious economic problems. For example, in *Fox Metal Industries v. Frontier Heating &*

---

**2.** Mangel contends that it preserved all objections, including its due process claim, by noting on the record of the July 27, 1976 hearing that "by not taking an interlocutory appeal on the question of jurisdiction and going forward with the hearing, [Mangel has] not waived any rights whatsoever." While the concept of an

omnibus objection may seem logical to Mangel, I need not consider this procedural innovation since, in context, it is clear that the statement by Mangel's counsel and the court's ready assent to it were only directed to questions of jurisdiction.

*Plumbing Co.,* 453 F.2d 1128 (10th Cir. 1972), Frontier, a mechanical contractor on a construction project, entered into a subcontract with Fox, a sheet metalwork firm that later filed for reorganization under Chapter X of the Bankruptcy Act. After Fox proved deficient in its performance, Frontier and Fox's receiver agreed to modify the subcontract. Performance again fell behind schedule and Frontier stopped payment on checks to Fox which had been returned for insufficiency of funds. The bankruptcy court did not find it necessary to determine whether the dishonored checks constituted property within the actual or constructive possession of the court before exercising summary jurisdiction. Instead, the trial judge observed:

". . . I'm looking through the checks as to what actually the relationship of the parties was. And the thing that impresses me is . . . that there was an imposition on the receiver and the property of the court as far as these people were concerned. They sought to become whole at the expense of the receivership and to let them get away with it, as I say, would give them property to which they are not equitably entitled."

*Id.* at 1130.

On appeal, the circuit court affirmed the decision of the trial court. In doing so, it relied upon Frontier's "participation in the receivership as above indicated, and its imposition on it or interference therewith." *Id.* at 1131.

Similarly, in *Governor Clinton Co. v. Knott,* 120 F.2d 149 (2d Cir. 1941), *appeal dismissed,* 314 U.S. 701, 62 S.Ct. 50, 86 L.Ed. 561 (1942), a case cited in *Fox Metal,* the bankruptcy court determined that it had jurisdiction to resolve allegations that a management firm hired to operate the debtor's business had engaged in fraudulent practices. After an evidentiary hearing, it ordered the repayment of monies which

were not within the custody of the court. This exercise of jurisdiction was upheld by the Court of Appeals for the Second Circuit which stated that:

". . . [S]ummary jurisdiction may be invoked for purposes other than to protect property within the actual or constructive possession of the court. Here a contract was made with the debtor in possession and a fraud worked on its estate through a common conspiracy among the respondents. This amounts to a fraud and imposition on the court itself; and in such cases the court undoubtedly has summary jurisdiction to protect itself and the interests of the persons and property within its custody."

*Id.* at 152.

The *Fox Metal* and *Governor Clinton* decisions present unusually compelling reasons to proceed by summary jurisdiction, but I agree with the bankruptcy Judge that the instant action merits similar treatment. The security agreement submitted to and approved by the bankruptcy court granted Mangel an interest in assets plainly within the custody of the court. But that agreement comprised only one element of a larger plan whereby Mangel would gain control of Fabric Tree and its assets. The extent to which the signing of each agreement hinged upon the successful negotiation of the others is best demonstrated by reference to the language of the security agreement presented to the court below for approval. It states that Mangel:

". . . intends to provide funds to Fabric [Tree] to confirm a plan of arrangement in the Proceedings and in connection therewith has contracted to purchase all of the outstanding common stock of Fabric [Tree]." [3]

By the time that the controversy over the escrow terms arose, Mangel had also become intimately involved in the operations

---

3. Similarly, the purchase and sale agreement provides that Mangel:

"... intends to make an offer . . . to the creditors . . . to advance, loan or contribute to Fabric [Tree] an amount sufficient to pay general unsecured creditors in

the Proceedings 15% of their claims (up to a maximum of $450,000) in cash upon confirmation, plus administrative expenses and priority claims (up to a maximum of $150,000). . . ."

of Fabric Tree: Fabric Tree had moved its corporate offices to the headquarters of Mangel and for some time Mangel had permitted Fabric Tree to use revenues derived from retail sales to pay expenses. This was done despite a clause in the security agreement which required Fabric Tree to first turn its revenues over to Mangel. Mangel was also present at bankruptcy court sessions held to consider the ultimate disposition of Fabric Tree. Although the record below does not show when Mangel formally entered an appearance, Judge Lesser noted that Mangel's "presence was here. We felt it. We saw it. We were told about it."

I therefore conclude that it would work an unfair imposition upon the operations of the bankruptcy court were it not permitted to decide disagreements under the escrow agreement. In doing so, I am mindful that chapter XI arrangements serve ameliorative purposes distinct from those of other bankruptcy proceedings and that they therefore justify a broad construction of the court's jurisdiction. *See In re Stockman Development Co.,* 447 F.2d 387 (9th Cir. 1971).

Mangel contends that the *Fox Metal* and *Governor Clinton* cases are inapplicable here because each involved a contract entered into with an officer of the court and assets within or owed to the debtor's estate. I am not persuaded, however, that the two cases cited are inapposite. Neither the *Fox Metal* nor the *Governor Clinton* court relied upon the presence of a res in *custodia legis* to find that summary jurisdiction existed. Moreover, unlike the instant action, the two cases did not involve contractual arrangements which had been submitted to the bankruptcy court for its formal approval.[4]

Mangel also cites a series of cases for the proposition that attempts by bankruptcy courts to exercise jurisdiction over escrow funds have never met with success. The

cases cited, however, generally involve different controlling principles of law. *Mid-Jersey National Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640 (3d Cir. 1975), for example, merely held that when funds are deposited in a federal district court pursuant to a court order in an ongoing action, a bankruptcy court may not intercede to resolve the underlying dispute when a chapter XI petition is subsequently filed. *Baxter v. United Forest Products Co.,* 406 F.2d 1120 (8th Cir.), *cert. denied,* 394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42 (1969), turned on the failure of the plaintiff to comply with Rule 64 of the Federal Rules of Civil Procedure which requires that the seizure of property as security for a judgment proceed under state law. *Saper v. West,* 263 F.2d 422 (2d Cir.), *cert. denied,* 360 U.S. 916, 79 S.Ct. 1433, 3 L.Ed.2d 1532 (1959), involved a voluntary petition in bankruptcy, but the scope of summary jurisdiction was not even an issue in the case. In *United States v. Neiwirth,* 370 F.Supp. 929 (D.N.J.1973), a court appointed receiver sought to shelter funds within the jurisdiction of the bankruptcy court although they had been transferred there from the account of a third party without the consent of the court. Clearly, Fabric Tree is not engaged in such a clandestine effort.

Two cases cited by Mangel do not suffer from such obvious infirmities. Both *Bayview Estates, Inc. v. Bayview Estates Mobile Home-Owners Assoc.,* 508 F.2d 405 (6th Cir. 1974), and *In re H. L. Gentry Construction Co.,* 200 F.Supp. 546 (E.D.Mich.1961), *aff'd,* 314 F.2d 945 (6th Cir. 1962), held that the bankruptcy court lacked summary jurisdiction over escrow funds established by parties other than the debtor. But in neither of these cases was the creation of the escrow fund even remotely related to matters then pending before the bankruptcy court. This is in marked contrast to the

---

4. The Second Circuit has suggested, possibly in *dicta,* that all elements of complex transactions involving corporations proceeding under Chapter XI should be heard by the bankruptcy court as a matter of summary jurisdiction:

"We think it a reasonable construction of the Act to say that, where a party enters into an

agreement before the referee, it thereby subjects itself to the bankruptcy court's summary jurisdiction as to the entire dispute over enforcement of the agreement." *In re Sherman Plastering Corp.,* 340 F.2d 915, 919–20 (2d Cir. 1965).

escrow fund in the instant action which (1) was an important part of the overall plan to gain court approval of a satisfactory arrangement, (2) grew out of negotiations involving both Fabric Tree and the Committee and (3) was conditioned upon the entry by the bankruptcy court of an order approving the plan of arrangement.

▮ Again, denial of summary jurisdiction here would, in my opinion, seriously impose upon efforts undertaken by the bankruptcy court at the behest of many parties including Mangel. I therefore decline to follow *Bayview Estates* and *Gentry Construction* to the extent that they conflict with the holdings in the *Fox Metal* and *Governor Clinton* cases, and I conclude that Judge Lesser had summary jurisdiction over Mangel.

## II. The Constitutional Claim

Mangel also raises a due process objection to the manner in which the bankruptcy court proceeded, particularly its failure to allow time for formal pleadings or discovery. At the beginning of the July 27, 1976 confirmation hearing, counsel for Mangel objected to the exercise of summary jurisdiction by the court, but no due process objection was articulated. Before the first witness was called that afternoon, counsel for Mangel carefully preserved his jurisdictional objection, however, he then agreed without further objection to proceed with a hearing on the merits. Indeed, during the course of that hearing he called several witnesses. This is, therefore, not a case where a party had no advance notice of the nature of the proceeding. *Ohio Bell Telephone Co. v. Public Utilities Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). As the court below observed, Mangel was not a stranger to the proceeding: it knew of the prior confirmation hearings before the bankruptcy court and was not taken by surprise. Moreover, having just come out of chapter XI itself, it must have also been familiar with the operations of the bankruptcy court.

▮ I therefore conclude that Mangel knowingly waived its due process objection to the hearing below by failing to object. *See, e. g., United States v. Vitasafe Corp.,* 352 F.2d 62 (2d Cir. 1965); *Schwartz v. S. S. Nassau,* 345 F.2d 465, 466 (2d Cir.), *cert. denied,* 382 U.S. 919, 86 S.Ct. 294, 15 L.Ed.2d 234 (1965).[5]

## III. The Findings Below

▮ Finally, Mangel contends that the bankruptcy court erred in its interpretation of the escrow agreement conditions and that Fabric Tree and the Committee have not met their burden of showing that time was not of the essence under the escrow agreement. The conclusions of the Bankruptcy judge must stand, however, unless they are shown to be clearly erroneous. Bankr.R. 810.

It is a fair inference from the evidence that time was not of the essence when the escrow agreement was signed. Mangel intervened in the chapter XI negotiations primarily because it wanted to convert lucrative shopping center sites leased by Fabric Tree into outlets for Mangel's apparel. Yet, the purchase and sale agreement did not require the Fabric Tree principals to request that landlords consent to such modifications until well after the July 15, 1976 "deadline." During the interim, it was Mangel's initial intention to continue operating fabric stores at the shopping centers. Mangel also had to make most of its inventory commitments for the fall season in advance of the July 15, 1976 date, whether or not confirmation resulted. Thus, a few days of delay would not have changed the scope of the Mangel financial commitment to Fabric Tree.

Operationally, there was also no difference between the proposed and the actual date of confirmation. Fabric Tree was already housed in Mangel headquarters. Moreover, the escrow fund was in the form of a certificate of deposit payable on September 2, 1976. Therefore, payments to

---

**5.** Mangel did raise a due process objection after Judge Lesser delivered his opinion on July 27, 1976, but an objection at that point in time was clearly of no consequence.

creditors and others would not have taken place until that date even if the plan had been approved at an earlier time; and interest on the certificate continued to accrue to Mangel regardless of the confirmation date.

■ In an effort to give effect to the actual intent of the parties to a contract, the courts have moved away from the rigid view that time is always of the essence in commercial contracts. *See, e. g., Hayes Mfg. Corp. v. McCauley,* 140 F.2d 187 (6th Cir. 1944); *The New Jersey Co. v. Nathaniel Wise Co.,* 55 Misc. 294, 295, 105 N.Y.S. 231, 233 (App.Term 1907), *aff'd,* 125 App. Div. 918, 109 N.Y.S. 1139 (1908). Thus, Mangel's recitation of many older cases holding to the contrary is of little value as each case should be decided after an examination of the particular evidentiary facts surrounding it, and not upon generalizations. Judge Lesser had an opportunity to observe the demeanor of witnesses at the evidentiary hearing and, based upon the record below, I agree with his finding that at the time the contract was signed it was the season, not the date, of confirmation that was of significance to the parties and that confirmation on August 2, 1976 was therefore timely. 5 Williston on Contracts § 663 (3d ed. 1961); Restatement of Contracts § 276(a) (1932).

I also share the bankruptcy court's view that Mangel wrongfully prevented confirmation on July 15, 1976. At that time, Mangel argued that Fabric Tree's use of loan funds to pay expenses incurred prior to May 7, 1976 as well as current operating costs raised the total amount necessary to pay administration and priority expenses above the agreed upon amount of $150,000. However, prior to July 15, 1976 Mangel had not insisted that Fabric Tree remit its daily receipts to Mangel. Thus, it had waived the right to rely upon the security agreement clause requiring immediate delivery of such items to Mangel. The president of Mangel also testified that he did not expect current operating costs to be charged against the $150,000 allocation. In light of this testimony Mangel cannot seriously contend that such costs should be included. More importantly, the testimony shows that Mangel presented the court with objections it knew were baseless.

*Gulf Oil Corp. v. American Louisiana Pipe Line Co.,* 282 F.2d 401 (6th Cir. 1960), arose under the similar facts and is instructive. There, Gulf had contracted to sell gas to American Louisiana provided that American Louisiana obtained within six months authority from the Federal Power Commission to transport the gas. During the application process, Gulf presented to the FPC additional conditions that were not part of the agreement although it knew or should have known that this would delay final approval of the application. The court of appeals held that Gulf had an obligation not to interfere with the process of application and approval and that, having breached that duty, it could not rely upon the delay it had caused as a basis for cancellation of the contract.

■ In the instant action, the bankruptcy judge found that Mangel's objections on July 15, 1976 were not raised in good faith. Much of the record lends support to this finding, particularly the cancellation by Mangel of orders and guarantees previously issued for the benefit of Fabric Tree. Judge Lesser also concluded that Mangel's objections and threats of suit had caused counsel for Fabric Tree to abstain from requesting confirmation on July 15, 1976. Mangel has not shown this finding to be clearly erroneous. I therefore agree with the court below that Mangel, having thwarted timely confirmation, may not now rely upon the passage of the escrow agreement deadline to justify cancellation of the contract and return of the escrow fund.

## IV. Conclusion

As the bankruptcy court observed, this is a most unusual case which presents questions not squarely addressed in the earlier decisions of this and other courts. Nevertheless, it is my firm belief that "third party acquirers who want to feed at the trough of the bankruptcy court's door"

must be held to the substance of their bargain.

Accordingly, the decision of the bankruptcy court to approve the arrangement petition is affirmed.

SO ORDERED.