RICHARD FELNER et al., Respondents, v MANGEL STORES CORPORATION, Appellant.

First Department, July 10, 1979

---

## APPEARANCES OF COUNSEL

*Joseph DiBenedetto* of counsel (*Andrea Catania* with him on the briefs; *Cole & Deitz,* attorneys), for appellant.

*Harold B. Tevelowitz* of counsel *(Robert Polstein* with him on the brief; *Oran, Elsen, Polstein & Naftalis,* attorneys), for respondents.

## OPINION OF THE COURT

LANE, J.

Richard Felner and Richard Echikson were the principal officers of Fabric Tree, Inc., a retail clothing chain. Fabric Tree had suffered reverses, and a petition for arrangement of its debts was filed in August, 1975. Mangel Stores Corporation had agreed to participate in a plan to put Fabric Tree's business in order, which included a $600,000 loan to Fabric Tree. Actually, there were three agreements entered into by the parties:

First, a purchase and sale agreement dated May 4, 1976, between Mangel and the principals of Fabric Tree, the bankrupt. Mangel agreed to purchase the stock of the principals and to hire them for at least one year. The principals were Felner and Echikson. The agreement was conditioned upon confirmation of a plan of arrangement before July 15, 1976.

Second, a loan and security agreement dated May 4, 1976 between Fabric Tree and Mangel. Mangel agreed to provide financing to Fabric Tree in exchange for a first lien upon assets of Fabric Tree. This was approved by the Bankruptcy Court on May 7, 1976.

Third, an escrow agreement sent by Mangel to the creditors' committee. Mangel agreed to turn over a $600,000 certificate of deposit to one Ballaban, chairman of the creditors' committee, as escrowee. This was to be used to fund a 15% plan for the creditors. In order for this escrow agreement to become operative, the Bankruptcy Court was to have granted Mangel a first security interest in all of Fabric Tree's assets on or before May 10, 1976, and the court was to confirm a plan requiring no more than $450,000 for payment of allowable unsecured claims, and $150,000 for administration expenses.

Litigation ensued prior to the present action involving Mangel and the creditors' committee of Fabric Tree. This resulted in a Bankruptcy Court decision against Mangel, directing them to submit $600,000 under the creditors' agreement. The Bankruptcy Court order, entered August 2, 1976, was confirmed by the District Court for the Southern District of New York *(Matter of Fabric Tree,* 426 F Supp 872), which

decision was in turn affirmed in the Second Circuit Court of Appeals *(Matter of Fabric Tree,* 558 F2d 1069).

In the case at bar, the individual plaintiffs brought a lawsuit asserting three causes of action. The first two are now subject to this court's review. The first cause of action involves the purchase agreement and rests on the "earn-out" provision of that agreement. The individuals, according to the agreement, were to sell Fabric Tree to Mangel for a percentage of the profits for three years up to $500,000. They claim that Mangel breached the agreement and they seek damages therefor.

The second cause of action involves the contractual provision also found in the purchase agreement requiring employment of the individual plaintiffs for one year at an annual salary of $60,000 each. It is claimed that Mangel breached that agreement as well.

Mangel's position is that these first two causes of action are barred as a result of a Bankruptcy Court order, entered in October, 1976, which directed the sale of the assets of Fabric Tree to Sande Textile Corporation. Paragraph 5 of that order, which requires notice of closing of the transaction to the creditors' committee and the placement of the proceeds in escrow, was solely for the benefit of the *creditors' committee* and had nothing to do with the individual plaintiffs. The balance of the order of the Bankruptcy Court was intended to implement the agreement entered into among Fabric Tree, Mangel Stores, and Sande Textile Corporation, without which court order the agreement would not survive. In fact, the sale of the corporate assets did take place. This Bankruptcy Court order was dated October 22, 1976, a time subsequent to the Bankruptcy Court order generally concerning the rights of the creditors' committee against Mangel. The order involving the creditors' committee was entered August 2, 1976.

It is patent that the October 22 Bankruptcy Court order directing the sale of Fabric Tree assets presumes no conspiracy and no impropriety or fraud on the part of Mangel. If such impropriety existed, the court would not have authorized the sale of the assets of the corporation.

Furthermore, the court could not have ordered the sale of the assets of the corporation and at the same time expect enforcement of the purchase or loan agreements which would require continuation of Fabric Tree in business.

Finally, it is to be noted that the individuals Felner and

Echikson, as principals of Fabric Tree, were in privity to all of the proceedings before the Bankruptcy Court, and should have, or could have, interposed as a defense the alleged fraud of Mangel and the alleged inability of Mangel to abide by the agency agreement should the sale take place. They are at this juncture estopped from asserting that claim.

Accordingly, the order of the Supreme Court, New York County, entered April 21, 1978, denying defendant's motion to dismiss the first and second causes of action, should be reversed, on the law, and the motion granted.

SANDLER, J. (dissenting). The court's opinion sets forth almost all of the pertinent facts. Omitted, however, is one circumstance that provides decisive support for the determination reached at Special Term. The bankruptcy order of October 22, 1976, relied upon to bar the causes of action in question, was in pertinent part intended to carry out an agreement, dated October 20, 1976, for a sale of assets that had been entered into by Fabric Tree, Inc. (in which the plaintiffs were principals), Mangel Stores Corporation and the Sande Textile Corporation. Indeed, the bankruptcy order included language explicitly alluding to that agreement and stating the conclusion that its approval was "in the best interest of all parties concerned."

However, the agreement for sale, approved and given effect in the bankruptcy order, in turn followed an agency agreement entered into by the plaintiffs and Mangel on October 11, 1976, in which the plaintiffs were designated as agents to find a purchaser for all the outstanding stock or assets of the company with provisions made for their compensation. That agreement included the following language: "this Agreement shall not be deemed to supersede, and the implementation of this Agreement shall not be a defense to the enforceability of, the Purchase and Sale Agreement dated May 4, 1976 among the parties hereto to the extent that such Purchase and Sale Agreement is otherwise valid and enforceable."

From the sequence of agreements, it certainly appears possible, and may indeed be thought likely, that the later agreement to sell assets, enforced in the bankruptcy order, was an implementation of the agency agreement which by the terms of that agreement was not to be a defense to the enforceability of the purchase and sale agreement.

Under these circumstances, a factual issue is clearly raised

with regard to the effect of the bankruptcy order on the first two causes of action.

Accordingly, the order appealed from denying defendant's motion to dismiss the first and second causes of action, should be affirmed.

BIRNS and FEIN, JJ., concur with LANE, J.; KUPFERMAN, J. P., and SANDLER, J., dissent in an opinion by SANDLER, J.

Order, Supreme Court, New York County, entered on April 21, 1978, reversed, on the law, and the motion to dismiss the first and second causes of action granted.