## PULLMAN COUCH CO. v. ESHELMAN et al. (two cases).

(Circuit Court of Appeals, Fourth Circuit. September 29, 1924.)

Nos. 2223, 2241.

**1. Bankruptcy ⊚⇒252—Purpose of statute and general orders requiring petition and notice to creditors of proposed compromise met by appearance of creditors.**

The purpose of requirements of General Orders in Bankruptcy Nos. 28, 33, for petition of bankruptcy trustee for proposed compromise of creditors' claims, and of Bankruptcy Act, § 58 (Comp. St. § 9642), that notice be given to creditors, was met when objecting creditor, at legal meeting of creditors, entered on consideration and discussion of compromise without objection.

**2. Bankruptcy ⊚⇒252—That creditor's claim was allowed in compromise as set up in proof held not to affect validity of compromise.**

Under Bankruptcy Act (Comp. St. §§ 9585–9656), that creditor's claim against bankrupt was allowed in compromise as set up in proof did not affect validity of compromise.

**3. Bankruptcy ⊚⇒252—Trustee's agreement to compromise, its recommendation by referee, and approval by District Judge creates strong presumption in its favor.**

Agreement of bankruptcy trustee to proposed compromise with creditors, referee's favorable recommendation, and District Judge's approval thereof gives rise at least to very strong presumption in its favor.

**4. Bankruptcy ⊚⇒467 — District Court's approval of proposed compromise not disturbed, unless court's discretion clearly abused.**

District Judge's order approving proposed compromise with bankrupt's creditors will not be interfered with, unless his discretion has been clearly abused.

**5. Bankruptcy ⊚⇒252—That person interested in bankrupt corporation purchased goods without giving seller actual notice of recorded deed of trust held strong evidence of his fraud.**

That person interested in bankrupt corporation purchased goods for bankrupt without

giving seller actual notice of recorded deed of trust covering all bankrupt's property was strong, if not conclusive, evidence of fraud on his part.

**6. Estoppel ⬦98(1) — Against president of bankrupt corporation to set up recorded deed of trust covering bankrupt's property held not to extend to bank which took corporation's note.**

Even if president of bankrupt corporation would be estopped to set up deed of trust covering corporation's property to secure debt against seller to corporation, who had no actual notice thereof, such estoppel would not extend to bank, which took corporation's note and became subrogated to president's right under deed of trust, without notice of failure to give notice to seller, and as to bank seller was charged with record notice.

**7. Bankruptcy ⬦252 — Where creditor's right to have claim allowed as secured claim was clear, and result of litigation of other claims was doubtful, court's approval of compromise cannot be disturbed.**

Where creditor's right to have its claim allowed as secured claim was clear, and there was serious doubt as to result of litigation as to other claims, order of court approving compromise cannot be disturbed.

Petition to Superintend and Revise Proceedings in Matter of Law, and Appeal from, the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd and Edwin Y. Webb, Judges.

In the matter of the Barnes Manufacturing Company, bankrupt. On petition by the Pullman Couch Company praying that an order approving compromise with creditors be vacated, that claim of H. G. Barnes be disallowed, and that claim of the Commercial National Bank of High Point be allowed only as unsecured debt. The compromise was approved and confirmed, and the Pullman Couch Company petitions to superintend and revise and appeals from such order. Petition to superintend and revise dismissed, and decree affirmed.

Jacob G. Grossberg, of Chicago, Ill. (Nathan Haffenberg and Harry E. Kopald, both of Chicago, Ill., and S. J. Stern, of Greensboro, N. C., on the brief); for petitioner and appellant.

Julius C. Smith and Aubrey L. Brooks, both of Greensboro, N. C. (Edward S. Parker, Jr., Robert R. King, Oscar L. Sapp, and R. R. King, Jr., all of Greensboro, N. C., on the brief), for respondents and appellees.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge. The Barnes Manufacturing Company was adjudged an involuntary bankrupt on April 17, 1923.

H. G. Barnes, president of the corporation, filed a claim for $54,700.54, alleging it to be secured by a deed of trust covering all the property of the bankrupt corporation. The Commercial National Bank proved a note of the bankrupt for $17,500, dated August 10, 1922, indorsed by Barnes, and claimed to be subrogated to the security of Barnes under the deed of trust. The deed of trust dated September 24, 1921, expresses that it was given to secure a debt of $50,000 then owing to Barnes and his indorsement to the Commercial National Bank of $15,000, and like future indorsements not to exceed in all $100,000. Eshelman, trustee in bankruptcy, contested the validity of both claims. The referee on September 24, 1923, issued a notice to creditors of the bankrupt that a meeting would be held in Greensboro on October 15, 1923, to pass on the receiver's claim for double commissions, to declare a dividend and to "consider the claims of H. G. Barnes, Commercial National Bank, and United States government, examine the bankrupt officials, and transact such other business as may come before said meeting." The meeting was held on October 15, 1923.

Counsel for Pullman Couch Company and other creditors were present and joined the counsel for the trustee in contesting the claims of Barnes and the bank. After taking testimony for six days on the validity of the claims, the referee intimated to counsel that in his opinion the attack had not been sustained, and that "from an equitable standpoint" the claim of Barnes should be allowed as an unsecured debt, and that of the bank as a debt secured by the deed of trust. Thereupon counsel for Barnes, subject to his approval, proposed the compromise suggested by the referee. The offer was declined and the meeting continued to the following Monday for the hearing of argument. On that day counsel for the trustee submitted as a counter offer of compromise that Barnes' claim, reduced by $11,300, be allowed as an unsecured claim, and that the claim of the bank also be allowed as an unsecured claim, any portion of it not satisfied by the dividend to the bank as an unsecured creditor to be paid from the dividend on the claim of Barnes. This offer was refused by Barnes. Conference between counsel for the trustee and Mr. Haffenberg, representing the Pullman Couch Company and other creditors, resulted in announcement by the trustee that he would accept Barnes' offer of compromise, and by Mr. Haffenberg that he would insist on the coun-

ter offer made by the trustee and himself as attorney for creditors.

On October 28, 1923, the referee filed his report, reciting in brief the proceedings of the meeting, approving the compromise, and allowing the claim of Barnes for $54,700.54 as an unsecured debt, and that of the bank as a secured debt for $17,500 and interest, and recommending approval by the court. On the same day an order was made appointing the referee special master to hear the evidence and report his conclusions of law and fact as to the validity of the claims of Barnes and the bank. By agreement this order was to be considered as made before the taking of testimony by the referee.

Nothing further was done for three months, and then on February 5, 1924, Pullman Couch Company filed its objections to the claim of the bank as a secured claim on the ground that the bank's claim to the security under the deed of trust was based on subrogation to Barnes' claim, and that as the deed of trust was invalid as to Barnes there was no basis for subrogation. On the same day the same creditor filed a petition asking that the claim of Barnes "be re-examined, disallowed, rejected, and expunged," on the ground that the bankrupt owed Barnes nothing, or, if anything, not the amount claimed. It was averred that the deed of trust should be set aside as to the Pullman Couch Company for the following reasons:

(1) It covered a stock of goods in trade to be left in the possession of the Barnes Manufacturing Company, with no provision for accounting to the secured creditor for goods sold, and did not cover goods afterwards added to the stock. (2) It was executed at the instance of Barnes, an officer of the corporation, when it was insolvent or verging on insolvency, and it was therefore a fraud on other creditors. (3) It was made with the intent to purchase goods for the insolvent corporation on credit from dealers ignorant of its existence. (4) The fraudulent purpose was actually carried out by failure to disclose the deed of trust at the time of purchase of goods on credit from the Pullman Couch Company and others, which would not have been sold had the existence of the deed of trust been known.

The referee certified the objections and petition to the District Court. On February 11, 1924, counsel for Pullman Couch Company filed a petition, praying that an order of January 28, 1924, approving the compromise be vacated, that the claim of Barnes be disallowed, and that the claim of the bank be allowed only as an unsecured debt. On the same day the District Judge made an order approving and confirming the compromise. No order of January 28, 1924, appears in the record. By petition to superintend and revise, and by appeal, the Pullman Couch Company in this court asks that the order approving the compromise agreed to by the trustee and recommended by the referee be reversed, to the end that creditors may have the Barnes claim altogether disallowed, and the claim of the bank disallowed as a secured debt.

[1] The first contention is that the agreement of the trustee to compromise was recommended by the referee and approved by the court without the petition of the trustee therefor required by General Orders in Bankruptcy Nos. 28 and 33, and without the notice to creditors of "the proposed compromise" required by section 58 of the statute (Comp. St. § 9642). The only purpose of the requirement that there should be a petition and notice to creditors is to give creditors opportunity to be heard in the consideration of the proposed compromise. That purpose was met when the objecting creditor at a legal meeting of creditors entered upon a consideration and discussion of compromise without objection of lack of petition or due notice. Montague Manufacturing Co. v. Ten Weeges (C. C. A.) 297 F. 221; Petition of Baxter, In re Orinoco Corporation (C. C. A.) 269 F. 344.

[2] The point that there was no compromise of the bank's claim, because it was allowed as set up in the proof, depends on excessive refinement in the construction of the statute. The claim of the bank to security was dependent on subrogation to the rights of Barnes under the deed of trust, and Barnes was individually liable to the bank as surety or indorser. In addition, if the claim of the bank had been allowed only as an unsecured debt it would have absorbed a very large part of the dividend coming to Barnes on his debt. Thus the two claims were so closely connected that they were very properly associated and considered together in the compromise negotiations.

[3, 4] The agreement of the trustee to the compromise proposed, the favorable recommendation of it by the referee and the approval of it by the District Judge gave rise at least to a very strong presumption in its favor. The statute conferred discretion on the District Judge to approve or reject the proposed compromise, and an order of approval made by him in the exercise of his

discretion will not be interfered with, unless it clearly appears that his discretion has been abused. 8 Remington on Bankruptcy, § 3874; Petition of Stuart, In re National Artificial Silk Co. (C. C. A.), 272 F. 938. We can therefore consider only whether the claims were so clearly invalid that there was no substantial reason for approval of the compromise. On the point we think a brief statement of the facts will be convincing.

There is no contest that the corporation was indebted to Barnes in a large amount. He testified that the true amount was stated in his proof of claim. It is true that his evidence, perhaps on account of his illness, was somewhat confused, but it tended to prove that the whole amount claimed was due. The debt to Barnes in the amount now claimed appeared on the statement exhibited to Pullman Couch Company as a basis of credit before its debt was contracted. Litigation looking to the reduction of the amount claimed would have been prolonged and expensive.

Without passing on the validity of the deed of trust at the date of its execution, it is safe to say there was strong reason in favor of its validity as a lien at least on the real estate and to the extent of the money advanced by the bank on the note of Barnes Manufacturing Company, indorsed by Barnes, after the execution of the deed of trust.

[5, 6] Hutcheson, who was interested in the Barnes Manufacturing Company, purchased goods for it and made the debt to the Pullman Couch Company without giving actual notice to the seller of the existence of the deed of trust. Although the deed of trust had been duly recorded, this was strong if not conclusive evidence of fraud on his part. Barnes denied participation in the fraud and we do not think the evidence against him convincing. It is not unlikely, however, that at the end of a long and expensive litigation the court would have held him to be estopped from setting up the deed of trust against the Pullman Couch Company in his own favor.

It would be inequitable, however, to extend the estoppel to the bank. At the time the bank took the note and thereby acquired the right of subrogation the deed of trust had been recorded, and the bank had no notice of the alleged fraud of failing to disclose the existence of the deed of trust to the Pullman Couch Company. In its contest with the bank, Pullman Couch Company is chargeable with notice of the deed of trust from the date of record. The bank's equity, therefore, was superior to that of the Pullman Couch Company.

[7] This statement of the matter seems to be convincing that there was no prospect of depriving the bank of the security of the deed of trust, and that there was serious doubt of the result of litigation as to the amount of Barnes' claim and his right to the security of the deed of trust. These conditions furnish a substantial reason for the approval of the compromise, and therefore the discretion of the District Judge cannot be disturbed.

It follows that, the case being here properly on an appeal, the petition to superintend and revise is dismissed, and the decree of the District Court appealed from is affirmed.

Case No. 2223 dismissed.
Case No. 2241 affirmed.