In the Matter of SHERMAN PLASTER-ING CORPORATION, Debtor.

PREISS TRADING CORPORATION, Appellant,

v.

PERINI CORPORATION, Appellee.

No. 5, Docket No. 28673.

United States Court of Appeals Second Circuit.

Argued Sept. 22, 1964.

Decided Jan. 12, 1965.

Charles Seligson, New York City (Theodore Gewertz, Harvey R. Miller, New York City, of counsel), for appellant.

Alexander H. Rockmore, New York City, for appellee.

Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge:

The controversy now before us presents the not too unusual situation of further litigation arising out of an attempt to settle and avoid a dispute. The parties involved are the Perini Corporation (Perini), general contractor for the con-

struction of the Rochester, New York Courthouse, Sherman Plastering Corporation (Sherman), to which Perini had subcontracted the lathing and plastering work, and Preiss Trading Corporation (Preiss) which had made capital advances to Sherman and had received an assignment of $25,000 of Sherman's accounts receivable.

On February 28, 1963, Sherman and Perini fell into a dispute over their obligations under the subcontract. Sherman ceased to perform and threatened to remove its men and equipment from the job.

On March 15, 1963, Sherman filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, and was authorized by the United States District Court for the Southern District of New York to manage its property as a "debtor in possession."

The initial meeting of creditors was held on April 11, 1963. Present were Sherman, Preiss, Perini, counsel for the unofficial creditors' committee, and various creditors. An official creditors' committee was elected. The dispute between Perini and Sherman concerning the subcontract then flared up. Sherman claimed that it would be forced to carry out its threat to abandon the Rochester project unless Perini paid additional sums claimed to be due; Perini responded that the removal of the Sherman employees and equipment would make a losing proposition out of what could be a profitable contract.

At the Referee's suggestion, Preiss, Perini and Sherman went into the Referee's chambers to try to settle their differences. The parties reached a settlement which was dictated to a stenographer. Under the agreement Perini was immediately to pay $5,000 to Sherman and $5,000 to Preiss. Sherman abandoned its threat to remove its men and equipment and instead allowed Perini to take over and complete the project. Perini was to retain the Sherman employees and equipment and to pay the cost of completion. Immediately after the close of the April 11, 1963 hearing,

Perini paid the $10,000, $5,000 to Preiss and $5,000 to Sherman (debtor-in-possession). The agreement also provided that "at the end of the job, which is prospectively six weeks from date, the general contractor [Perini] will pay an additional $15,000 to the Preiss Trading Corporation and the balance if any which is due, being the difference between the actual cost of the job and the contract price, will be paid to the debtor-in-possession." The Referee heard the stipulation and thanked the parties.

As Preiss construes the agreement, Perini was absolutely obligated to pay Preiss an additional $15,000 on completion of the project and Preiss, in turn, was to cancel the balance of $20,000 due from Perini on its assigned accounts receivable. Perini claims that it was obligated to pay Preiss the additional sum provided there was a surplus of that amount between the cost of completion and the contract price, but agrees that Preiss was to cancel the balance of the assignment on receipt of $15,000 from Perini.

On July 2, 1963 Preiss made a formal written demand on Perini for payment of $15,000. On July 5th Perini wrote to the Referee stating that a dispute had arisen "regarding the liabilities for payment under the arrangement made * * *" at the hearing of April 11th and requesting that a "hearing of all parties concerned be scheduled as soon as possible in order to review the accounting pertaining to this contract at this time." On the same day, Perini wrote Preiss and denied liability under the agreement. This letter enclosed a copy of Perini's request to the Referee and stated that "should some sort of formal notice other than the attached letter be required to bring about such a hearing, [we] would have no objection to your filing this notice so that we may both be heard regarding the matter of your assignment."

Accordingly, on July 11th Perini was ordered to show cause on July 23rd why it should not be forced to complete the payments stipulated in the agreement.

A hearing was held on the return date. Perini appeared and urged the merits of its position, i. e., that the payments had been contingent upon profitable completion. No jurisdictional objection was raised at this time by Perini. The Referee, however, on his own motion expressed some doubts as to his jurisdiction and gave Perini leave to file a formal answer to the demand for payment.

The hearing was adjourned to August 8, 1963 at which time Perini filed a formal answer denying liability and objecting to the jurisdiction of the Referee over the dispute in these summary proceedings. The Referee held that he had no jurisdiction and, without prejudice to the institution of a plenary suit, denied Preiss' application for an order directing Perini to pay $15,000 to Preiss. On review, this decision was upheld by the District Court. Preiss now appeals from this decision.

Perini claims that it interposed timely objections to jurisdiction and that it, therefore, never consented to the summary, personal or subject matter jurisdiction of the Referee.

■■ An adverse claimant in bankruptcy proceedings generally is entitled to have his claim determined by a plenary suit rather than by summary proceedings. However, the referee has the power, pursuant to section 2, sub. a (7) of the Bankruptcy Act, to proceed summarily where the property in dispute is in the bankruptcy court's possession or where the objecting party has entered into a compromise valid under the Bankruptcy Act. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628,

84 L.Ed. 876 (1940). No distinction has been made between subject matter and personal jurisdiction where the party has subjected himself to the referee's jurisdiction through participation in a compromise. In re Hollingsworth & Whitney Co., 242 F. 753 (1st Cir. 1917); In re Oceanic Ship Scaling Co., 108 F.Supp. 7 (E.D.N.Y.1952).

The present case turns on the status of the agreement of April 11, 1963. If this agreement is a valid and enforceable compromise under the Bankruptcy Act, Perini's jurisdictional objections were not timely since they were raised *after* participation in the compromise.

■■ Under section 27 of the Bankruptcy Act, a trustee or receiver in bankruptcy may "compromise any controversy arising out of the administration of the estate upon such terms as he may deem for the best interest of the estate," but court approval is required. General Order 33 implements section 27 and provides that a debtor in possession may conclude a compromise in the best interest of the estate upon application to the court for such authority.[1] Section 58 provides for ten days' notice by mail of the "proposed compromise" to creditors of the bankrupt. However, these requirements of petition and notice have been held non-jurisdictional if no interested party is prejudiced by their non-fulfillment. In re Kansas City Journal-Post Co., 144 F.2d 816 (8th Cir. 1944); In re L. M. Axle Co., 3 F.2d 581 (6th Cir. 1925); Pullman Couch Co. v. Eshelman, 1 F.2d 885 (4th Cir. 1924), cert. denied, 266 U.S. 631, 45 S.Ct. 197, 69 L.Ed. 478 (1925).[2] "The authority of the court to

---

1. Section 27 of the Bankruptcy Act requires court approval of contracts made by the trustee or receiver while General Order 33 allows a debtor in possession to petition the court for authority to enter into an agreement. However, any implication of a possible variance between section 27 and General Order 33 has been implicitly resolved by the courts in favor of a construction of General Order 33 as an additional reasonable grant of power to the debtor in possession. Governor Clinton Co. v. Knott, 120 F.

2d 149 (2d Cir.), appeal dismissed, 314 U.S. 701, 62 S.Ct. 50, 86 L.Ed. 561 (1941); In re California Eastern Airways, 95 F.Supp. 348 (D.Del.1951).

2. In these decisions interested parties have usually been held not to have been prejudiced when they were present at the negotiation and formation of the compromise and thus had notice coupled with an opportunity to object. Perini's argument that only the unofficial creditors' committee was represented through its counsel is unsound since the personnel

pass upon a compromise springs from the Act and not the General Orders." 2 Collier, Bankruptcy § 27.04, at 1088 (Moore & Oglesbay ed., 1964).

Here, the Referee, with all necessary parties before him, not only urged them to settle their dispute but after having an opportunity to examine the compromise actually applauded their success. The lack of a formal order of approval was due to the Referee's subsequent finding that he did not have power to issue such an order since the requirements of Sections 27 and 58 and General Order 33 had not been met. In effect, the Referee rested his decision on the ground that he did not have power to approve the compromise because he had not approved the compromise.

But Perini also consented in another fashion to the summary jurisdiction of the Referee. Perini not only participated in the compromise proceedings before the Referee from which it obtained the equipment and the cancellation by Preiss of $5,000 of its claim, but it also affirmatively sought adjudication of the dispute as to whether there was a balance due Sherman or Preiss at the completion of the Rochester project. This court has held such a request to be the equivalent of consent by an adverse claimant. Foodtown of Oyster Bay, Inc. v. Dilbert's Leasing Co. & Devel. Corp., 334 F.2d 768 (2d Cir. 1964).[3]

Perini also claims that service of the order to show cause, dated July 11, 1963, was defective in that it was made by certified mail outside the territorial limits of the jurisdiction of the district court. Sections 2, sub. a and 18, sub. a of the Bankruptcy Act; Rule 4(f), Fed. R.Civ.P. This argument is refuted, however, by Perini's participation in the compromise and by its consent to summary jurisdiction as expressed in its assertion of a claim in its communications of July 5, 1963.

Finally, Perini argues that the Referee had no jurisdiction since section 23, sub. a of the Bankruptcy Act limits the jurisdiction of the District courts and, hence, the summary jurisdiction of the Referee to "all controversies * * * between receivers and trustees as such and adverse claimants * * *" Perini contends that the present controversy is a collateral dispute between third parties (Preiss and Perini) and thus outside the summary jurisdiction of the Referee. This argument was accepted by the Referee as an alternate basis for his conclusion that jurisdiction was lacking. However, in the present case the debtor-in-possession must be seen as the equivalent of a trustee and its contracts as the equivalent of agreements with the bankruptcy court itself. In re California Eastern Airways, 95 F.Supp. 348 (D.Del. 1951). Moreover, it is doubtful that the parties are engaged in a collateral dispute since invalidation of the April compromise will subject the debtor to renewed claims by Perini and Preiss while Sherman will be forced to press claims of its own against Perini. In addition, a multi-party compromise often gives rise to a variety of interrelated claims some of which do not directly involve the debtor. We think it a reasonable construction of the Act to say that, where a party enters into an agreement before the Referee, it thereby subjects itself to the bankruptcy court's summary jurisdiction as to the entire dispute over en-

of the unofficial committee comprised the total membership of the official committee and counsel remained in attendance throughout. Furthermore, it has not been shown that any creditor raised an objection during performance of the agreement. Nor was it shown that the compromise was not in the best interest of the estate.

3. The mere filing of a proof of a claim has not been considered consent to summary jurisdiction. B. F. Avery & Sons v. Davis, 192 F.2d 255 (5th Cir. 1951), cert. denied, 342 U.S. 945, 72 S.Ct. 559, 96 L.Ed. 703 (1952); In the Matter of H. L. Gentry Constr. Co., 200 F.Supp. 546 (E.D.Mich.1961) aff'd 314 F.2d 945 (6th Cir. 1963); In re Houston Seed Co., 122 F.Supp. 340 (N.D.Ala.1954). In the case at bar, Perini went farther since it requested and received an opportunity to litigate its claim on the merits.

forcement of the agreement. Central States Corp. v. Luther, 215 F.2d 38 (10th Cir. 1954), cert. denied, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955).

█ The Referee should have entertained the dispute over the meaning of the compromise placed in the record before him. Accordingly, the proceeding is remanded to the Referee for a determination of the issues on the merits.

Reversed and remanded.