In the Matter of **BLACK WATCH FARMS, INC.,** Bankrupt.

**EMPIRE NATIONAL BANK,** Appellant,

v.

Everett A. **FROHLICH,** Trustee, Appellee.

No. 70 B 691.

United States District Court,
S. D. New York.

April 1, 1974.

Amend & Amend, New York City, by Richard L. Schmeidler and Robert I. Harwood, New York City, for appellant.

Schwartz, Burns, Lesser & Jacoby, New York City, by Arnold I. Burns, Alan B. Hyman, and Lawrence A. Greenberg, New York City, for appellee.

## OPINION

TYLER, District Judge.

This is an appeal, pursuant to 11 U.S.C. § 67(c), from an order of the Honorable R. Lewis Townsend, Referee in Bankruptcy. In this order, dated October 1, 1973, the Referee granted the trustee's application to approve a proposed compromise on the condition that an agreement spread on the record before Referee Babitt on September 14, 1973 be reduced to writing and properly executed. The appellee in this case is Everett A. Frohlich, trustee for the bankrupt estate, Black Watch Farms, Inc. ("Black Watch"). The appellant is Empire National Bank ("Empire"), a creditor of Black Watch. Because, so far as the record shows, the information presented to Referee Townsend may not have been sufficient to enable him to determine whether or not the compromise

was in the best interests of Black Watch, this matter must be remanded to Referee Townsend for further proceedings not inconsistent with this opinion.

In order to comprehend the matters here at issue, it is necessary to discuss the events which led to Referee Townsend's approval of the compromise. On December 14, 1972, the Black Watch trustee, then Harold E. Martin, obtained a default judgment against Jack R. Dick ("Dick") in the United States District Court for the District of Connecticut for $5,270,031. On July 20, 1973, Dick's motion to vacate the judgment was denied by that court; he then filed a notice of appeal from the denial of his motion. Upon learning that Dick intended to sell a large portion of his very valuable art collection in London, utilizing the services of Sotheby & Co. ("Sotheby") as auctioneers, the trustee on August 14, 1973, secured a temporary restraining order enjoining Dick from disposing of any of his assets without an order of the Connecticut court. Dick, however, had already removed part of his collection to New York, and these paintings had been seized by the United States to insure collection of unpaid federal income taxes. The trustee, therefore, on August 20, 1973, obtained a similar temporary restraining order from Referee Townsend preventing the sale of these paintings. Negotiations were then begun with Dick, the United States and other creditors of Dick. These resulted in the proposed agreement here at issue, which was spread on the record at a hearing before Referee Babitt on September 14, 1973. On September 25, 1973, a meeting was held in which creditors were invited to show cause why the proposed settlement agreement should not be approved; on October 1, 1973, Referee Townsend entered his decision, approving the compromise; and on October 3, 1973, the definitive agreements referred to in Referee Townsend's decision were filed.

As can be seen from the aforementioned series of events, matters moved rather expeditiously once it was learned that the sale of Dick's art collection was imminent. According to the trustee, the reason for this haste was that Dick and Sotheby had entered into an agreement calling for the sale of the Dick collection, beginning with an auction in London on October 31, 1973. In preparation for this sale, Sotheby had expended large sums of money for advertising. If an agreement among the creditors of Dick had not been reached, it would have been necessary to call off the sale, thus giving up a very favorable opportunity to realize good value for the pictures. In addition, the trustee states that Dick's real estate in Greenwich, Connecticut was scheduled to be sold pursuant to a foreclosure sale on October 20, 1973. There was a possibility that the Internal Revenue Service might have independently sold the paintings it had seized, without making use of the expert services of Sotheby. The trustee also believed that there was a real chance that Dick would be forced into bankruptcy. The sale of the paintings through Sotheby prevented the realization of these possibilities.

Basically, the terms of the compromise provide that Black Watch will receive $1,750,000 in cash from the sale of the Dick paintings. The compromise further provides certain indemnification provisions designed to relieve the bankrupt estate of any obligation to pay the $1,490,981.01 claimed by the IRS from Black Watch on the ground that it was a transferee of B. W. Farms, Inc. The sale of the Dick paintings is scheduled to take place in four installments. The first sale took place on October 31, 1973, and the second is scheduled to occur in June, 1974. Sotheby agreed that it would pay $5,600,000 to certain of Dick's creditors on January 9, 1974 from which Black Watch would be paid $850,000. The additional $900,000 promised to the bankrupt was to be paid from the proceeds of the third and fourth sales in the spring and fall of 1975.

Appellant has argued that the trustee's application for authority to compromise the controversy was procedurally defective in that it did not provide

sufficient information to the creditors of Black Watch, thus failing to comply with the requirements of Bankruptcy General Order 33.[1] As will be indicated, the trustee's application was deficient in a number of technical respects. Whether or not these deficiencies were sufficient to make the application violative of General Order 33, however, is not easy to determine.

There have been few decisions which have focused on the issue of how full a disclosure is required by § 27, 11 U.S.C. § 50 and General Order 33. In In Re National Public Service Corp., 68 F.2d 859 (2d Cir. 1934), cert. denied, Utilities Power & Light Corp. v. Irving Trust Co., 292 U.S. 641, 54 S.Ct. 773, 78 L.Ed. 1492 (1934), Judge L. Hand, writing for the circuit court stated that:

> "Section 27 certainly presupposes that the creditors shall be advised of the facts fully enough to act intelligently, and the trustee must see to it that they are. He must make a full statement of the relevant facts in his petition for leave and must be prepared at the meeting to advise the creditors fully." Id. 68 F.2d at 862.

When faced with a possibly defective statement by the trustee, however, the courts have shown certain tolerance and flexibility. See, e. g. In Re Kansas City Journal-Post Co., 144 F.2d 816 (8th Cir. 1944); Pullman Couch Co. v. Eshelman, 1 F.2d 885, 887 (4th Cir. 1924), cert. denied, 266 U.S. 631, 45 S.Ct. 197, 69 L. Ed. 478 (1925); In Re Southern Land Title Corp., 310 F.Supp. 450 (E.D.La. 1970). Cf. In Re Sherman Plastering Corp., 340 F.2d 915, 918–919 (2d Cir. 1965). It would seem that the purpose of General Order 33 is to give the creditors sufficient notice so that they can present their questions and objections before the compromise is approved. In view of the facts that a meeting was held for the purpose of hearing objections to the compromise and that, because of the time pressures, it was not possible to present the final terms of the compromise, the content of the trustee's petition may well have been sufficient here. This conclusion would be supported by the fact that Referee Townsend, in his decision of October 1, 1973, passed on this same issue and found that the trustee's application complied with General Order 33. In view of the inadequacy of the record as presented to Referee Townsend, however, it is unnecessary to decide whether or not the trustee's application complied with General Order 33 since this matter must, in any case, be remanded for further proceedings.

Another issue raised by appellants is whether the notice of the creditors' meeting was given sufficiently in advance of the meeting to comply with the provisions of § 58(a) of the Bankruptcy Act, 11 U.S.C. § 94(a). Alternatively, appellant argues that the notice also did not comply with the terms of the September 18, 1973 order to show cause. On September 19, 1973, the trustee sent out a notice to the creditors for what was termed a "special meeting of the creditors", which meeting was to be held on September 25, 1973. Subsection 58(a)(3), however, specifies that creditors must be given ten days' notice by mail of creditors' meetings. No provision is made for any reduction of this period. Subsection 58(a)(6) states that ten days' notice is also required of any proposed compromise of a controversy. Under this subsection, however, the court has the power to direct that no notice be sent. Referee Townsend assumed that notice was being sent pursuant to § 58(a)(6) rather than § 58(a)(3) (see Decision of Referee

---

1. General Order 33, (now Rule 919(a)) which applied to proceedings prior to October 1, 1973, provided that:

"[w]henever a receiver, trustee or debtor in possession shall make application to the court for authority to submit to arbitration any controversy arising in the settlement of an estate, or for authority to compromise any such controversy, the application shall clearly and distinctly set forth the subject matter of the controversy, and the reasons why it is proper and for the best interest of the estate that the controversy should be settled by arbitration or compromise."

Townsend at 1, Oct. 1, 1973), and in his order to show cause directed that only five days' notice be given. Although the trustee used the term "meeting of creditors", it is clear that what was involved was a consideration of a compromise; § 58(a)(6) was, therefore, the applicable subsection. Since under this subsection the court may do away with notice altogether, it would seem to follow that the court may also provide for less than ten days' notice. Appellant, however, has argued that no "court" ordered the less than ten days' notice, apparently because the order came from a referee rather than a judge. This contention is not convincing since an examination of § 58 reveals that the use of the word "court" does not appear to be intended to exclude the referee.

■ As already stated, notice of the meeting was mailed September 19, for a meeting to be held on September 25. September 22 and 23 fell on Saturday and Sunday. Appellant has argued that this notice did not comply with the five, day provision notice required by Referee Townsend since under the terms of F.R. Civ.P. 6(a), Saturdays and Sundays must be excluded in computing a time limit of less than seven days. According to the terms of General Order 37,[2] (now replaced by Bankruptcy Rule 906(c), effective October 1, 1973), F.R.Civ.P. 6(a) is at least presumably applicable here. Referee Townsend, however, was entitled to modify F.R.Civ.P. 6(a) so that Saturday and Sunday would be counted in the computation of any time period, and such may have been his intent. At the time Referee Townsend signed the order, he may have overlooked the applicability of F.R.Civ.P. 6(a). Unfortunately, no objection was made to the Referee concerning this point, so he had no occasion to state what, in fact, his intention was.[3] Because this case must be remanded to Referee Townsend for further consideration of the proposed compromise, this court need not hazard a guess concerning the Referee's intention. Moreover, since the compromise is to be reconsidered, the creditors will have further opportunity to present their objections to the Referee.

When a claim of a bankrupt estate is compromised, the basic question to be analyzed is whether or not the compromise is in the best interest of the estate. 11 U.S.C. § 50. In the instant case, there are certain factors which make such an analysis difficult. No precise value can be set on the default judgment obtained by the trustee against Dick. The outcome of Dick's appeal from the Connecticut district court's refusal to vacate the default judgment was uncertain. Moreover, even if it were assumed that the judgment would not be vacated, it would still be uncertain just how much of the judgment could be realized. As indicated above, any delay might well result in a substantial reduction of Dick's assets. Furthermore, Black Watch was by no means the only creditor of Dick. In addition to the IRS, Dick also owed substantial sums of money to Sotheby, the State National Bank of Connecticut, Benjamin C. Cohen, individually and for certain of his affiliated entities, the law firm of Winkler, Gottlieb, Taylor & Howard, the First National Bank of Highland, the Chase Manhattan Bank and others not specified. According to the trustee, the secured claims of other creditors totalled over $8,600,000. See Petition of August 20, 1973, § 7.

■ In view of these uncertainties, the decision of Referee Townsend is en-

2. General Order 37 provides that:
"In proceedings under the Act the Rules of Civil Procedure for the District Courts of the United States shall, insofar as they are not inconsistent with the Act or with these general orders, be followed as nearly as may be. But the court may shorten the limitations of time prescribed so as to expedite hearings, and may otherwise modify the rules for the preparation or hearing of any particular proceeding."

3. Where the petition for review makes no mention of an issue, the courts have held that a judge may decline to pass upon the issue. See cases cited in Collier On Bankruptcy, ¶ 39.22.

titled to much weight. See, e. g. In re Kansas City Journal-Post Co., 144 F.2d 816 (8th Cir. 1944); Drexel v. Loomis, 35 F.2d 800 (8th Cir. 1929). Nevertheless, the Referee's decision must be supported by the record (Cf. Blair v. Barton, 26 F.2d 765 (1st Cir. 1928)), and, in this case, there are certain important aspects of the compromise about which the Referee was not sufficiently informed—at least so far as the record shows.

In order for the Referee to make an informed decision concerning the probability of collecting the full amount of Black Watch's judgment from Dick, it would have been necessary for him to have known the approximate value of the assets from which the judgment could be satisfied. No definitive value was ever attached to the real estate owned by Dick, although Dick claimed that his home was worth $3,000,000 (Exhibit 3 of Trustee's Petition of August 20, 1973). The paintings to be sold were listed at values ranging from seven to thirteen million dollars and no value was put on the furnishings, jewelry, sculptures or books of Dick. Indeed, it may have been the case that Dick was financially able to satisfy in full all of his creditors, including Black Watch. A related issue about which information is lacking is the seniority of the claims of the other creditors as compared to the claim of Black Watch.

The trustee has represented that Black Watch would be relieved of its obligation to pay the $1,490,981.01 it owed to the IRS in its capacity as a transferee of B. W. Farms, Inc. The IRS, however, has this same claim against Dick, whom it alleged was also a transferee of B. W. Farms Inc. As was pointed out in the proceedings before Referee Babitt (Transcript at 33, September 19, 1973), the IRS would not have enforced this claim both against Dick and Black Watch. If possible, information should have been developed concerning who, if anyone, was primarily liable for this tax. If, for example, it is the policy of the IRS to collect one-half from each party, then the practical effect of the compromise was to save Black Watch only $745,490.50 in taxes rather than the $1,490,981.01 saving claimed by the trustee.

Another factor to which some consideration should have been given was the likelihood that Dick would succeed in vacating the default judgment against him and, if so, whether or not Black Watch would in that event still have eventually prevailed on the merits.

It should also be noted that Referee Townsend did not have the final agreement before him when he reached his decision on October 1, 1973. The agreement was not put in final form until two days later and certain terms not earlier mentioned were included. Specifically, no mention was made in the proposed agreement approved by the Referee of the $540,000 which was to go to Sotheby in payment of certain loans it had made to Dick.

■■ In their briefs, Black Watch and the government have argued that the compromise should not be disturbed because Empire neglected to stay the implementation of Referee Townsend's order. There is no requirement of the Bankruptcy Laws, however, which makes an attempt to stay an order a precondition to an appeal from that order. Moreover, this appeal is by no means moot because the issue of whether or not the compromise has been approved has obviously not been finally decided. Of more weight is the argument that Referee Townsend's order should not be modified because of the difficulties which any change would produce for the parties who have relied on the agreement. By this time, if the terms of the agreement have been followed, the paintings have already been removed to London and many of them sold. Sotheby's check of $5,437,500 has been received, and certain of Dick's creditors, including Black Watch, have been paid at least a portion of the sums promised to them. It should also be noted that Dick has withdrawn his appeal from the district

court's denial of his motion to vacate the judgment against him. Nevertheless, it is the duty of the trustee to insure that any compromise into which he enters is in the best interest of the bankrupt estate, and this court would be remiss were it to approve an unsuitable agreement. On remand, however, the Referee must examine the interests of Black Watch as they exist in the present. The expense which any change in the agreement would cause to Black Watch is yet another factor which he must consider in weighing the merits of the agreement.

The compromise, therefore, will neither be approved nor disapproved, and this case is remanded to the Referee for a consideration of the factors and questions discussed in this opinion. It is so ordered.