**In re LIBERTY MUSIC AND VIDEO, INC.**

**FREE-TAN CORP., Appellant,**

**v.**

**49–50 ASSOCIATES, Appellee.**

**No. 84 Civ. 7272 (WK).**

United States District Court, S.D. New York.

June 18, 1985.

Supplemental Memorandum
June 21, 1985.

Fensterheim & Fensterheim by Harold B. Tevelowitz, White Plains, N.Y., for appellant.

Jaffe & Segal by David F. Segal, Gelberg & Abrams by Marc S. Kirchner, James A. Cohen, New York City, for appellee.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

The question presented by this appeal from the Bankruptcy Court (Prudence B. Abram, Judge) is whether or not that court had jurisdiction to issue an order enjoining appellant Free-Tan from using certain leased premises "for the conduct or operation of any business unless and until the store was appropriately and permanently fixtured for a high grade and respectable operation or until such time as Free-Tan obtain[ed] the landlord's consent in writing to any temporary or permanent use of the premises." [1]

---

1. We believe this order, although titled a "preliminary" injunction, was by its terms permanent. It was issued after the bankruptcy court had conducted three days of fact hearings, and it contemplated no additional proceedings. The only events which could modify or lift it were compliance with its terms. It is thus unnecessary to address appellant's second contention that the court erred by improperly applying the requirements of F.R.Civ.P. 65. We note, how-

Appellant Free-Tan owns and operates a chain of retail clothing stores which do business under the names of "Strawberry" and "Chuckles." Appellee 49–50 Associates is the landlord of a building located 444–450 Madison Avenue in Manhattan, commonly known as the Newsweek Building. On October 21, 1983, Judge Abram issued an order (the "Order") approving the assignment to appellant of a lease in the Newsweek Building which was held by the debtor in a Chapter 11 proceeding before her.[2] Appellant paid valuable consideration for the assignment of the lease, which was one of the debtor's main assets.

The Order, made pursuant to 11 U.S.C. § 365, followed three days of hearings which were prompted by the landlord-appellee's strenuous objections to the proposed assignment. The landlord, which had twice before rejected appellant as a tenant, based its objection on its belief that appellant's business (primarily the operation of discount stores) was not appropriate to the image it was trying to maintain for the Newsweek Building. The landlord was, in addition, concerned that the types of signs and physical layout to be employed by appellant might not conform to the requirements of the lease and of Newsweek Building regulations.

At the hearing, appellant represented to the bankruptcy court that it had always engaged prominent architects to design its stores, which contained the "finest types of marble, carpets, mirrors, lighting and such." Tr. 47, 10/13/83 Hearing. It presented photographs of one of its "Strawberry" stores which had won awards for its first-class design. Tr. 52–53, 10/13/83 Hearing. It suggested that such photograph represented the type of store it intended for the leased premises (the "Premises"), *ibid.*, and stipulated that

any area rented in accordance with the assignment from the debtor would receive careful and costly planning and design. Tr. 48–49, 10/13/83 Hearing. It assured the bankruptcy court that the landlord's fears were unfounded, and that any operation on the leased premises would be that of a "high class" retail clothing store.

Upon these representations Judge Abram issued her Order approving the assignment. The Order provided that appellant's intended use of the Premises as a "Strawberry-type store" would not constitute a violation of the lease and authorized appellant to make certain non-structural alterations to the Premises. It enjoined the landlord from commencing any legal or equitable action against appellant "for the purpose of challenging the validity or the enforceability of the assignment of the lease.... or declaring the lease in default or terminating the estate thereunder for any default which occurred prior to the assignment thereof....". In addition, it ordered "that except as otherwise modified by the terms of this Order and Judgment, all of the terms, covenants, conditions, liabilities and obligations of or arising out of the lease including those related to signs shall remain in full force and effect." Finally, the Order, which was apparently drafted by counsel for appellant[3], directed "that the Bankruptcy Court retain exclusive jurisdiction to hear and determine any dispute which may arise out of or in connection with the [assignment] Agreement and/or this Order and Judgment....". This last provision for retention of jurisdiction was explicitly brought to Judge Abram's attention by counsel for appellant before the order was signed. Tr. 74–75, 10/18/83 Hearing.

---

ever, that even were this order appropriately deemed "preliminary," it does not appear to us that the court wrongly exercised its power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, 11 U.S.C. § 105(a), or its inherent power to enforce its own order issued pursuant to the Code. In addition, the requisite findings necessary for a

preliminary injunction permeate the comments of the court in the hearings leading up to issuance of the injunction.

**2.** The debtor is not a party to this appeal.

**3.** Transcript of oral argument of May 24, 1985 at 10; Tr. 72, 74–75, 10/18/83 Hearing.

Under the terms of the lease, tenants were not permitted to make structural modifications to leased premises without the landlord's prior approval. About a month after the Order was entered, appellant applied for such permission. The landlord refused. Appellant thereupon proceeded to the bankruptcy court to compel the landlord to accept its building plans. Judge Abram denied such relief on the ground that appellant's plans were simply preliminary drawings from which appellant's own expert admitted he would never attempt to commence actual construction. See Tr. 25–26, 5/9/84 Hearing. About two months later appellant applied to Judge Abram for similar relief. This relief was likewise denied, Judge Abram noting that appellant had refused "from the very beginning to undertake to prepare the drawings at the point in time which it should have prepared the drawings." Tr. 55, 1/19/84 Hearing.

The following month, appellant again submitted proposed plans, which were again rejected by the landlord. However, in the interest of expediting appellant's receipt of the requisite municipal building permit, Judge Abram approved the plans for the limited purpose of permitting appellant to submit them to the Department of Buildings, and reserved decision on the bulk of the landlord's objections.[4]

Appellant next appealed for help from the bankruptcy court when the landlord served a notice of default upon it for its failure to post a letter of credit required by the Order of assignment. Judge Abram, upon appellant's application, enjoined the landlord from terminating the lease due to this default.

Appellant's actions thereafter became more extreme. One evening in April, 1984 —without notice to anybody—it sent a demolition crew to the Newsweek Building to commence physical alteration of its leased premises. The landlord had not approved, either of its own accord or pursuant to order of the bankruptcy court, any such alteration. In addition, the demolition crew had received incorrect instructions and intended to tear apart not appellant's premises, but an adjoining candy store and part of the building lobby. The landlord was able to prevent this unhappy result by contacting Judge Abram and conveying a stern message from her to the crew. The following day Judge Abram translated that message into a temporary restraining order preventing appellant from proceeding with any alterations until it had acquired the landlord's approval of its building plans. The temporary restraining order was converted into a preliminary injunction on May 9, 1984.[5]

At the hearing for the preliminary injunction, appellant for the first time claimed that the bankruptcy court lacked jurisdiction to enter such an order. To this contention the court replied (Tr. 11–12, 13–14, 5/9/84 Hearing):

[T]he issue of what [appellant] Free-Tan may do in the way of alterations has been an issue which was tied up with the original assignment agreement, it has been an issue which Free-Tan raised many times before there was a closing, it was an issue which Free-Tan has repeatedly come into this Court with since then ...

A court always has jurisdiction to enforce its own orders.

These proceedings have all been directed at the enforcement of that order which I entered which approved the assignment of this lease.

Undaunted, on the weekend after issuance of this injunction, appellant moved clothing racks into the unrenovated leased premises, covered the debtor's fixed sign with its own, and hung on the window an "Open for Business" sign made of paper. Tr. 47, 57–58, 5/22/84 Hearing; Tr. 16, 24, 5/14/85 Hearing. In addition, it placed

---

4. This order is also the subject of appellant Free-Tan's separate appeal currently pending before the Honorable William Conner, U.S.D.J.

5. This injunction is also apparently the subject of Free-Tan's separate appeal currently pending before the Honorable Shirley Wohl Kram, U.S. D.J.

placards over the racks of clothing which depicted certain prices which were slashed through. These slashed prices were followed by lower prices, and the signs were visible from the street, apparently in violation of the lease as well as the building's regulations. Tr. 25, 5/14/85 Hearing. The landlord immediately applied for an order enjoining appellant from commencing business, and Judge Abram held three days of hearings on the question whether an injunction should issue.

At the outset of the hearing, Judge Abram, in response to appellant's protests that it was not doing anything improper, noted that her Order approving the lease assignment (Tr. 6, 5/14/85 Hearing):

> permitted operation of a Strawberry-type store. Encompassed within that consent is a certain level of fixturing and appearance. ... I did not approve the assignment of this lease to a rack jobber.

In response to appellant's suggestion that the bankruptcy court lacked jurisdiction over the matter, Judge Abram offered her analysis, which we reproduce in part (Tr. 10–14, 5/14/84 Hearing):

> [L]et me suggest to you that the predicate, as far as I'm concerned, is a question of does the act complained of go to the order ... approving the assignment.

> \*   \*   \*   \*   \*   \*

> The use of the premises, and by that I encompass the manner in which things are styled, ... seems to me to go right back to the Order permitting the assignment.

> The Order permitting the assignment says that, "Free-Tan's intended use of the premises as a Strawberry type store for sale of women's apparel and/or women's and men's apparel and related accessories will not be a violation of the lease."

> Now, it seems to me that until such time as the store initially opens and passes muster, that I am still—we are still back to what was the Order of Assignment intended to permit this tenant to do.

The whole trial on the assumption and assignment turned on precisely the question of whether or not Free-Tan and Strawberry ... was a discounter, whether they were a low class merchandise operation which violated the spirit or intent of the lease.

> \*   \*   \*   \*   \*   \*

> It is not at all clear to me that I would have approved the assignment of this lease to say, an Odd-Lot Trading, not at all clear to me that I would have approved that.

> \*   \*   \*   \*   \*   \*

> I will say to you that I do not believe that a tenant who takes a lease from assignment by the Bankruptcy Court, and then seeks to have the Bankruptcy Court preserve its jurisdiction by seeking relief from this Court[,] when it decides that the Court is not deciding in its favor, can simply go to another forum that it hopes will have a more favorable judgment for it.

The court issued its injunction forbidding appellant from conducting any business on the leased premises until it had appropriately fixtured and upgraded the premises or until it obtained the landlord's written consent. This appeal followed.

## DISCUSSION

Appellant acquired the debtor's lease solely by virtue of the bankruptcy court's Order over the strenuous objections of a landlord which had twice before rejected it. Appellant in obtaining that Order specifically asked that the court retain jurisdiction over its enforcement and invoked such jurisdiction on more than one occasion. Having obtained its desired assignment, and having been adjudged in noncompliance with its terms, appellant now seeks to remove itself from the bankruptcy court's scrutiny by asserting in essence that its previous actions and positions before Judge Abram were unlawful. We find this stance not only to be without basis in law, but a blatant attempt at forum shopping once one forum has been shopped out.

Even if Judge Abram had not—at appellant's request—explicitly retained jurisdiction over disputes arising from the assignment, appellant would have "subject[ed] itself to the bankruptcy court's summary jurisdiction over enforcement of the agreement" by entering into the assignment which Judge Abram had ordered. *In Re Sherman Plastering Corp.* (2d Cir. 1965) 340 F.2d 915, 919–20. *Accord In Re Fabric Tree, Inc.* (2d Cir.1977) 558 F.2d 1069 (having consented to the bankruptcy court's jurisdiction in order to acquire approval of a security agreement, appellant cannot escape jurisdiction in its later dispute with third party arising from agreement); *In Re Samoset Association* (1st Cir.1981) 654 F.2d 247 (jurisdiction to enjoin party to agreement from commencing suit in another court against other party to agreement). This is because, even though the jurisdiction of the court normally ends once the bankrupt estate is settled and property transferred, the bankruptcy court may nevertheless exercise jurisdiction "over a dispute involving the rights and priorities of private parties after a sale where the dispute involves a review and clarification of the bankruptcy proceedings leading to the sale." 4B Collier on Bankruptcy ¶ 70.98[18], at 1198 n. 13 (14th ed. 1978).[6]

Clearly, the May 24th injunction resulted from a "dispute over enforcement of the agreement," *In Re Sherman Plastering Corp.*, 340 F.2d at 919, and required a "review and clarification of the bankruptcy proceedings leading to" the assignment of the lease. Collier on Bankruptcy, *supra.*

A threshold condition of the assignment was that the store to be opened by appellant meet certain design and quality standards. These standards, as well as appellant's obligation to meet them, were embodied in Judge Abram's direction that appellant's operation of a "Strawberry type store" would not be a default under the lease, and pervade the minutes of the hearings leading up to and following entry of the Order of assignment. After a finding that appellant had tried to open a business which did not meet these standards, Judge Abram's order enjoining such operation simply insured that the conditions of her order authorizing the assignment were not flouted.

Appellant is incorrect in asserting that Judge Abram was improperly adjudicating a simple landlord-tenant dispute. Her decision was not grounded in a finding that the lease had somehow been breached, but rather resulted from a finding that the threshold conditions of her Order approving the assignment had not been met.

Furthermore, it was appellant who requested that the court retain jurisdiction over the Order, and affirmatively invoked that power. This constitutes a separate ground for finding that the court was empowered to exercise that power and thereby bind appellant. *See In Re Sherman Plastering Corp.* (2d Cir.1965) 340 F.2d at 919 (affirmative request that court enforce order a separate basis for jurisdiction); *Foodtown of Oyster Bay, Inc. v. Dilbert's Leasing & Dev. Corp.* (2d Cir.1964) 334 F.2d 768 (voluntary participation in bankruptcy court proceedings). Appellant's un-

---

6. Appellant has suggested that its status in this action has changed due to enactment of the 1984 Amendments to the Bankruptcy Code. Pub.L. No. 98–353, 98 Stat. 340 (1984). It has not, however, suggested in what way it has changed, and we do not see that it has. Even we conduct our analysis under the new law, which was signed into effect after the proceedings and order before us had occurred and which was to have prospective effect only, 1 Collier on Bankruptcy, 23.01[4] at 3–49 (15th Ed.1984), we find that Judge Abram had jurisdiction over the dispute. Her order approving assignment of the debtor's lease was a "core" proceeding involving approval of the sale of the

debtor's property, 28 U.S.C. §§ 157(b)(2)(N) (West Supp. Sept. 1984), and our conclusion that the instant dispute arose out of that approval remains the same. Even if her Order of assignment had not been made as part of a core proceeding, jurisdiction existed due to appellant's request that the court retain jurisdiction and its subsequent invocation of that power. Such consent to the court's supervision, coupled with our finding under either the old or new law that the instant dispute was related to the Title 11 case before the court, sufficed to confer jurisdiction upon the court. 28 U.S.C. §§ 157(c)(2) (West Supp. Sept. 1984) *See In Re Lombard Wall, Inc.* (S.D.N.Y.1985) 48 B.R. 986.

happiness with the results of its request is not grounds to cancel it.

■ Having found no merit in appellant's arguments, we turn to the landlord's request that we grant it reasonable costs and attorneys fees pursuant to F.R.C.P. 11. The application of Rule 11 depends on whether "after a reasonable inquiry, a competent attorney could form a reasonable belief that the pleading is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp. v. City of New York* (2d Cir.1985) 762 F.2d 243, 254. We have found appellant's position without basis in the law or the facts. The absence of a factual predicate for its arguments is accentuated by its inconsistent positions before Judge Abram and before us, which inconsistency seems due only to whether Judge Abram's decisions favored or hurt it. We accordingly grant the landlord's application, and remand to Judge Abram to determine what amount would represent appellee's reasonable expenses incurred in defending this appeal, including a reasonable attorney's fee. *See Eastway Construction Co., supra* at 254. Appellant and its attorneys shall be jointly and severally liable for any such sum.

In summary, the appeal is dismissed. Appellee's motion for costs and attorneys' fees under Rule 11 is granted.

SO ORDERED.

### SUPPLEMENTAL MEMORANDUM

We hereby supplement our Memorandum and Order dated June 18, 1985 as follows by adding the text below as an addendum to the opinion:

On June 18, 1985, we issued a Memorandum and Order approving an order entered by Judge Abram on May 24, 1984. We now supplement that opinion as to certain points not raised by either party to that appeal, but suggested by our Court of Appeals' recent decision in *In re Lafayette Radio Electronics Corp.*, 761 F.2d 84 (2d Cir.1985).

■ When Judge Abram entered her Order approving the lease assignment on October 21, 1983, she retained jurisdiction over enforcement of that Order in disputes arising therefrom. Under the Supreme Court's ruling in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.* (1982) 458 U.S. 50, she would not have been empowered to retain such jurisdiction over an action "related to" the bankruptcy proceedings. *See Lafayette, supra* at 3022. Although it found it a close question, the *Lafayette* court ruled that enforcement of the term of an order assigning a debtor's lease was an action "related to" rather than "arising from" proceedings in bankruptcy. *Id.* at 3016 n. 3. To the extent Judge Abram's Order of assignment is read as retaining jurisdiction over actions merely "related to" bankruptcy proceedings, it may have been invalid. However, that question is eliminated by the fact that the Order was submitted to and approved by United States District Judge Cooper. *See In re Kaiser* (2d Cir.1983) 722 F.2d 1574.

It is, however, arguable that Judge Abram should have submitted the conclusions leading to her May 24, 1984 injunction as her "findings, conclusions and a proposed judgment and order" under Emergency Bankruptcy Rule I § (d)(3)(B) which was then in effect. Having reviewed *de novo* the proceedings in this action as well as her findings, we conclude that no further hearings are necessary and concur in her conclusion that the injunction entered in this case was necessary and proper. We accordingly approve it not only as a function of appellate review, but adopt it as the order and judgment of this Court.

We also amend our Memorandum and Order of June 18, 1985 to provide that Judge Abram's Order be affirmed rather than ordering the appeal therefrom dismissed.

SO ORDERED.