861 F.2d 715
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re R.R.R. & G., INC., Debtor.
FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,
v.
W. Dalton BUNDY; Leona Lee Bundy, Defendants-Appelees.
 No. 87-2188.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 4, 1988.
Decided: Oct. 19, 1988.
 
 Deborah Hunt Devan (Steven K. Fedder, Joyce A. Kuhns, Weinberg & Green; Alan M. Grochal, Melnicover, Kaufman, Weiner, Smouse and Garbis, P.A., on brief), for appellant.
 (Paul F. Newhouse, Eccleston and Seidler, on brief), for appellees.
 Before WIDENER and CHAPMAN, Circuit Judges, and EUGENE A. GORDON, Senior District Judge for the Middle District of North Carolina, sitting by designation.
 CHAPMAN, Circuit Judge:
 
 
 1
 This appeal arises from bankruptcy litigation over proceeds from the sale of property owned by a now-defunct real estate development corporation. The Federal Deposit Insurance Corporation (FDIC) claims error by the district court in ratifying a compromise agreement between the trustee and a lienholder, when such compromise was without notice to the other creditors, had not been approved by the bankruptcy court beforehand, and was not found by either the bankruptcy court or the district court to be "in the best interest of the estate as a whole." FDIC was the only creditor affected by the compromise under which the trustee agreed not to pursue its efforts to avoid the lien created by a judgment held by W. Dalton Bundy and Leona Dee Bundy in exchange for the Bundys agreeing to the immediate sale of certain real estate and the transfer of their lien from the real estate to the proceeds of the sale.
 
 
 2
 The FDIC attorney was present at the hearing to approve the compromise, and he offered nothing in opposition to the evidence presented in support of the request for approval. However, even if there was a compromise agreement between the trustee and the Bundys, neither the bankruptcy court nor the district court discussed or found that the agreement was in the best interest of the estate as a whole as required by our decisions, and we affirm in part and reverse and remand for further consideration of this issue.
 
 
 3
 * In 1968 debtor (RRR & G), a real estate development corporation, executed a contract to purchase for a country club development real estate owned by the Bundys. As part consideration, RRR & G gave to the Bundys a confessed judgment note in the amount of $50,000, secured by a first mortgage on some lots fronting on the golf course.
 
 
 4
 In April 1973 RRR & G obtained funding for the proposed development from Farmers Bank of Delaware (Farmers) and secured Farmers with certain land installment contracts. Farmers perfected its security interest by filing financial statements in December 1974.
 
 
 5
 Both RRR & G and Farmers encountered financial difficulties in early 1976. To assist Farmers, FDIC purchased the RRR & G loan and began collecting payments under the land installment contracts. In early 1976 RRR & G defaulted on its obligations to Farmers and FDIC requested additional security for the loan. As additional security RRR & G gave to Farmers a mortgage dated February 17, 1976, on certain additional real estate including amenities in the country club development. This mortgage was assigned to FDIC.
 
 
 6
 In April 1976 RRR & G defaulted on its obligations to the Bundys, and the Bundys obtained a $50,000.00 judgment by confession on April 23, 1976. Under Maryland law, this judgment became a lien on all real property of the judgment debtor (RRR & G) in the county in which the judgment was entered. Md.Cts. & Jud.Proc.Code Ann. Sec. 11-402(b) (1984). As a result of other proceedings, FDIC, the Bundys and several other creditors had liens on the same property.
 
 
 7
 Creditors of RRR & G filed an involuntary petition for bankruptcy one month after the Bundys obtained judgment. On August 25, 1976, the receiver, who had been appointed under Chapter 11, brought an action to avoid the lien of the FDIC mortgage and the judgment liens of the Bundys and five other judgment creditors. The action proceeded against some of the other judgment creditors and resulted in their liens being avoided. However, pursuant to an agreement between attorneys representing the Bundys and the receiver, the trial of the receiver's claim that the Bundys' lien should be avoided was postponed, and a stipulation was entered which stated, in part, "nothing herein shall be construed as a waiver by either party of any of the rights which are claimed in the present adversary proceeding."
 
 
 8
 On February 28, 1978, the bankruptcy court voided FDIC's mortgage lien, authorized the trustee to collect future proceeds from the land installment contracts, and directed FDIC to turn over to the trustee monies collected to date ($106,000.00) from the land installment contracts. By this time the Chapter 11 liquidation had been converted into a Chapter 10 reorganization.
 
 
 9
 Over the objection of FDIC, a Plan of reorganization was confirmed on September 1, 1978, and FDIC was directed to turn over to the trustee approximately $365,691.62. Later the trustee repaid FDIC approximately $60,000.00, which reduced FDIC's present claim to $305,691.62.
 
 
 10
 The trustee continued to operate RRR & G under the Plan until January 1982, when the bankruptcy court found that the Plan had never been performed and RRR & G was adjudged a bankrupt. In March 1982 a new trustee was appointed to sell the assets of the bankrupt and apply the proceeds to the payment of its creditors. This trustee filed a complaint against FDIC, the Bundys and other creditors seeking to sell the real estate of RRR & G free and clear of all existing liens and encumbrances. At this time the trustee stated that he did not wish to avoid the existing liens, but that he merely sought to transfer the liens from the real estate to proceeds from the sale of the real estate in order to sell the real estate quickly and at a good price. The Bundys did not file an answer to the complaint and a default judgment was entered against them on May 28, 1982, authorizing the sale of the real estate and the transfer of the lien from the real estate to the proceeds. The property was sold for $475,000.
 
 
 11
 On March 28, 1985, the trustee filed his first report with the bankruptcy court, and noted the existence of the FDIC lien, the Bundy lien and liens of other judgment creditors. Two of the judgment liens had been avoided and others were not in dispute, so they were ordered paid. After such payments and expenses had been dispersed, the amount of $106,500 remains, and it is the subject of the present controversy.
 
 
 12
 In October 1986 a hearing was held on a motion by the trustee to determine the priority of creditors to the proceeds of the sale of the real property and to decide whether to avoid the Bundy lien. This was in reality a continuation of the action brought in 1976, but which was continued as to the Bundy claim. At this hearing Oliver R. Guyther, attorney for the Bundys, testified that in April or May 1982 he entered into an agreement with the trustee's attorney and the trustee, whereby the Bundys' lien would not be avoided if the Bundys agreed to allow the trustee to sell the real estate free and clear of their lien and transfer the lien to the proceeds of the sale. Mr. Guyther also testified that the trustee agreed that the Bundy lien, after transfer to the proceeds of the sale, would be prior to that of other creditors.
 
 
 13
 The attorney for FDIC was present at this hearing, and he insisted that FDIC was a party to the issue before the court. However, the attorney did not cross-examine Mr. Guyther or any other witness, and he did not put any evidence into the record in opposition to the Bundy case. The FDIC attorney did not claim lack of notice of the hearing or raise any other issue, except the claim that the Guyther testimony was hearsay. By order of November 21, 1986, the court validated the Bundy lien, including accrued interest, and ordered the trustee to distribute $106,340.78 to the Bundys. This order was stayed pending appeal to the District Court, and on September 28, 1987, the district court affirmed the order of the bankruptcy court, and in doing so relied upon the Guyther testimony as an accurate statement of fact, particularly since it was not contradicted either by cross-examination or by rebuttal testimony. The district court found that the Bundy lien was not void but voidable, and that under St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003 (4th Cir.1985), a trustee may compromise litigation with creditors, and may waive certain rights of the estate if it is in the best interest of the estate as a whole. The district court also found that the trustee was estopped from challenging the validity of the Bundys' lien and that the FDIC had impliedly consented to the Bundys' claim that the trustee had waived his right to avoid the Bundy lien. FDIC appealed and the district court judgment has been stayed.
 
 II
 
 14
 There is no merit to the claim that the Bundy judgment lien was void as a matter of law. This bankruptcy proceeding commenced prior to the enactment of the Bankruptcy Reform Act of 1978, 11 U.S.C. Sec. 101 et seq., and the examination of the transactions in question is made under the former Bankruptcy Code. See Pub.L. No. 95-598, Sec. 403(a), 92 Stat. 2549, 2683 (1978) (quoted at 11 U.S.C. prec. Sec. 101 (1982)). The Bundy judgment was entered on April 23, 1976, and the bankruptcy petition was filed May 27, 1976. In ruling on another lien covering RRR & G property, the bankruptcy court held that as early as March 5, 1976, RRR & G was insolvent. The bankruptcy court has voided the Ben Dyer lien entered March 5, 1976, and also voided the Jimmy Lee lien entered April 27, 1976. The Bundys were defendants in the same action with Dyer and Lee, but the bankruptcy court delayed ruling on the trustee's claim that the Bundy lien should also be voided. Under the old Bankruptcy Code, judgment liens obtained within four months of the filing of a bankruptcy petition "shall be deemed null and void." Bankruptcy Act of 1898, Sec. 67(a)(1), 11 U.S.C. Sec. 107(a)(1) (1976). Despite this unequivocal language, such liens are deemed to be voidable rather than void. Fischer v. Pauline Oil & Gas Co., 309 U.S. 294, 302 (1940).
 
 
 15
 There is no prohibition against a trustee compromising, settling or waiving a claim, if it "is found to be in the best interests of the estate as a whole." St. Paul Fire & Marine Ins. Co. v. Vaughn, supra, at 1010. The approval of a settlement is committed to the sound discretion of the bankruptcy court. Vaughn, supra, at 1010.
 
 
 16
 FDIC claims that the action of the bankruptcy court in approving the compromise between the attorney for the Bundys and the attorney for the trustee was error, because FDIC was not given notice of the hearing at which the compromise was approved, and that the compromise was entered into without prior court approval.
 
 
 17
 FDIC is too late with its claim of lack of notice. It did not raise this objection at the hearing in the bankruptcy court on October 20, 1986. FDIC was represented by its attorney, Steven K. Fedder, at this hearing, and it had the opportunity to cross-examine the Bundy witnesses and to present evidence to support its claim that there was not binding nor legal compromise of the trustee's claim that the Bundy judgment lien was a preference and should be voided. The judge inquired as to whether FDIC was a party to the issue of compromise and Attorney Fedder insisted that, as a creditor of RRR & G, FDIC was a party and its rights could be affected by the court's decision. If FDIC was concerned about timely notice of the October 20, 1986, hearing, it should have stated its position to the court when it had an opportunity and when something could have been done to accommodate FDIC by way of postponement, a continuance, or a recess to allow FDIC to call witnesses or otherwise present its case. The FDIC attorney took no action that would indicate to the court that he was concerned about the lack of prior notice, or that his client might be prejudiced thereby.
 
 
 18
 In Pullman Coach Co. v. Eshelman, 1 F.2d 885, 887 (4th Cir.1924) we stated:
 
 
 19
 The only purpose of the requirement that there should be a petition and notice to creditors is to give creditors opportunity to be heard in the consideration of the proposed compromise. That purpose was met when the objecting creditor at a legal meeting of creditors entered upon a consideration and discussion of compromise without objection of lack of petition or due notice.
 
 
 20
 Attorney Fedder participated in the hearing and he insisted that FDIC was a party thereto. As a party, present at the hearing and stating no objection as to lack of notice, FDIC may not now complain. Objections not made and positions not asserted at trial are generally considered waived, and this rule certainly applies to the FDIC claim of lack of notice. See Meissner Engineers, Inc. v. Thomas, 421 F.2d 12 (7th Cir.1970).
 
 
 21
 There is no merit to the claim that the compromise was entered into prior to court approval. Nothing was done under the compromise until it received court approval. Even now no action has been taken to pay the Bundys, pursuant to the compromise, because the proceedings have been stayed pending this appeal. FDIC may not complain that the compromise agreement was made prior to court approval, so long as the agreement was made subject to court approval. It is the normal sequence of events that parties reach an agreement and then seek to have it approved by the court.
 
 IV
 
 22
 We now face the issue of whether the compromise, by which the trustee waived his claim that the Bundy lien should be voided in exchange for the Bundys' agreeing to an immediate sale of certain real estate and a transfer of their lien to the proceeds of the sale, was "in the best interest of the estate as a whole." Vaughn, supra, at 1010. We find it impossible to review the decision of either court and determine if there was an abuse of discretion in approving the compromise, because neither court discussed nor decided the essential issue of "the best interest of the estate as a whole."
 
 
 23
 From our review of the record, we have difficulty seeing how the waiver, by the trustee of his claim to avoid the Bundy lien, could have been in the best interest of the bankrupt estate as a whole. The lien was obtained by way of a judgment entered only one month prior to RRR & G's petition in bankruptcy. There has been no explanation of how this lien differs from the liens that have already been avoided. It is difficult to find that the trustee received anything in exchange for the waiver of his right to seek to avoid the Bundy lien. It is argued that the consent of the Bundys to the sale of certain real estate and the transfer of their lien from the real estate to the proceeds of the sale was the consideration moving to the trustee. However, the trustee was not required to have the consent of the Bundys to sell the land and transfer their lien to the proceeds. Van Huffel v. Harkelrod, 284 U.S. 225, 227-228 (1931). The trustee had brought an action seeking court approval to sell the land free of liens, and judgment had been entered granting the relief requested against the Bundys on May 28, 1982, when the court found the Bundys to be in default. The court had already found RRR & G to be insolvent as early as March 5, 1976. The Bundy claim became a lien on April 23, 1976, and the petition to adjudge RRR & G a bankrupt was filed May 27, 1976. Proof of these facts will normally result in voiding the lien, but the trustee allegedly waived this prima facie case in exchange for something he already had--the right to sell the real estate and transfer the Bundy lien to the sale proceeds.
 
 
 24
 By making these observations, we do not attempt to prejudge the issue of whether the compromise and waiver were in the best interest of the estate, but we simply call to the attention of the district court and the bankruptcy court what appears to us to be an obvious problem that should be addressed on remand. Since neither court found the compromise and waiver to be in the best interest of the bankruptcy estate as a whole, we must remand for further consideration.
 
 
 25
 AFFIRMED IN PART REVERSED AND REMANDED.